## DANIEL C. ALDRICH *vs.* JOHNSON WARREN.

Where a note, or other negotiable paper, is shown to have been fraudulent in its inception, or to have been fraudulently put into circulation, the burthen is thrown upon the holder, to prove that he came fairly by the note, and without any knowledge of the fraud; and it is not enough that it was negotiated before its maturity, but it must be made to appear to have been done fairly, in the due course of business, and unattended with any circumstances justly calculated to awaken suspicion.

If three combine and conspire to defraud another as a common object, the declarations and actions of one are evidence against all.

Testimony to prove that false certificates of the value of an article sold, were by the seller exhibited to others than the purchaser, for the purpose of effecting a sale, being evidence of a general design to deceive any one who could thus be drawn in to make the purchase, is admissible to prove the sale to be fraudulent.

EXCEPTIONS from the Court of Common Pleas, WHITMAN C. J. presiding.

Assumpsit upon a note of hand, signed by the defendant, dated *August* 20, 1835, and payable to *Barzillai Latham*, or bearer, at the *Casco Bank* in *Portland*, in ninety days, for the sum of $406,50. The defendant rested his defence upon the ground, that the note was obtained by fraud, and was without consideration, and that the plaintiff was not an innocent holder of the note for a valuable consideration. To make out his defence, the defendant offered the deposition of one *Hoyt*, parts of which were objected to, but the whole was admitted. Among others of a similar character objected to, are the following question and answer. " 10th

int. Did or did not said *Latham* represent to you, that the signers of said certificates were fine and honest men, and had signed nothing but what was true and correct? Answer by deponent. He did." The defendant also offered evidence showing that the note in suit was one of several given as the consideration of the assignment of a bond from one *Perkins* to *Latham*, *Bradley* and *Cushman* of the right to purchase on certain terms, an undivided portion of a certain No. 4, in an eighth range, and by the two latter assigned to *Latham*. To induce the deponent to make a purchase of the same land, certain certificates were exhibited by *Latham* to him, representing that there was a large quantity of valuable timber on the township, when in fact there was little timber or none, and the township was nearly worthless. The certificates were either intended by the makers to apply to another township No. 4, and were by *Latham* applied to this, or were false. There was testimony tending to show, that *Perkins*, *Bradley* and *Cushman* knew of the fraud, and were to share in the profits. This testimony was objected to by the plaintiff but admitted. The defendant introduced evidence tending to show, that these certificates had been shown to *Hoyt* and others to induce them to purchase the same land, which was objected to by the plaintiff, but admitted. There was no direct evidence that the plaintiff was induced to make the purchase by the exhibition of these certificates. There was some testimony creating suspicion, that the plaintiff was but the agent of *Latham* and others in bringing the suit, rather than proving the fact. The defendant here rested. The Judge ruled, that if it was made out, that there was fraud in the inception of the note, the burden of proof was on the plaintiff to show, that he came innocently by it and paid a fair consideration for it. The plaintiff objected, insisting that it was for the defendant to adduce evidence to show, that the plaintiff was not the innocent holder of the note for a valuable consideration. The objection was overruled. The plaintiff then introduced certain testimony for the purpose of showing that the note was indorsed to the plaintiff before it was due, and was his property.

The Judge instructed the jury, that the note declared on having been read to them, the plaintiff must be considered as having made out a good case *prima facie ;* that if the defendant would avoid

the note for fraud in obtaining it, he must make satisfactory proof of the fraud; that if they were satisfied, that a conspiracy had been formed in reference to the bond from *Perkins*, between *Latham*, *Cushman* and *Bradley*, with an intention of defrauding some one, in such case, they would consider whatever either said or did, in furtherance of the object, as evidence against them all; that if *Latham* was set forward by the others for the purpose, and had designedly employed another person to aid him in deceiving the defendant, and had thereby imposed upon the defendant, and induced him to give the note in question without adequate consideration therefor, the note must be considered as void; unless the evidence in the case should satisfy them that the plaintiff was the innocent and *bona fide* holder of the note.

The verdict was for the defendant, and the plaintiff filed exceptions.

*W. P. Fessenden*, for the plaintiff, argued, that the testimony of *Hoyt* and others, that *Latham* had made fraudulent representations to them in respect to this land, was mere hearsay, and the relation of attempts to defraud others not communicated to the defendant, and therefore not admissible in evidence. 2 *Stark. Ev.* 470; *Flagg* v. *Willington*, 6 *Greenl.* 386; *Somes* v. *Skinner*, 16 *Mass. R.* 348; *Peake's N. P. Cases*, 95; 1 *Car. & P.* 65. The same objection applies to the exhibition of the certificates. There is no proof that they were shown to the defendant, or that he had any knowledge of them. The declarations and conversations of *Latham*, *Cushman* and *Bradley*, were improperly admitted. The decisions of the Judge in relation to the burthen of proof were erroneous. When it is shown that there was fraud in obtaining the note, it throws the burthen on the indorser to show, that the note came into his hands before it was due. This is sufficient for him. The plaintiff cannot prove a negative, that he did not know of the fraud, but the defendant is to prove that he had that knowledge. This is the extent of *Munroe* v. *Cooper*, in the 5th of *Pick.*

*Codman & Fox* argued for the defendant, and cited 3 *Burr.* 1516; 1 *Camp.* 100; 2 *Campb.* 574; *Douglas*, 633; 13 *East*, 134; 2 *Car. & P.* 606; *Chitty on Bills*, *(8th Ed.)* 652; 2 *B. & Ad.* 291; 2 *Crompt. M. & R.* 342; 1 *Moody & M.* 80; 5

Aldrich v. Warren.

*Binn.* 469 ; 10 *Johns. R.* 231; *Munroe* v. *Cooper*, 5 *Pick.* 412 ; 3 *Kent,* 79; *Commonwealth* v. *Crowninshield,* 10 *Pick.* 497 ; 3 *Serg. & R.* 320 ; 2 *Stark. Ev.* 402; *Seaver* v. *Dingley,* 4 *Greenl.* 306 ; *McKenney* v. *Dingley*, 4 *Greenl.* 172.

The opinion of the Court was by

WESTON C. J. — The law is well settled, that where a note, or other negotiable paper, is shown to have been fraudulent in its inception, or to have been fraudulently put into circulation, the burthen is thrown upon the holder, to prove that he came by the possession fairly, without any knowledge of the fraud. It is not enough merely to show, that it was negotiated before its maturity. It must appear to have been done fairly, in the due course of business, unattended with any circumstances, justly calculated to awaken suspicion. This doctrine is established by the cases cited for the defendant. They are principally collected in *Munroe* v. *Cooper & al.,* 5 *Pick.* 412, which is an authority directly and strongly in point.

It appears, that the certificates made by *Moore, Furber* and *Hatch,* were intended to apply to a different township from that for which the note in question was given, although designated by the same number and range ; and it further appears, that there was testimony, not objected to, tending to show that this fact was known to *Latham,* the payee of the note, and to *Cushman* and *Bradley.* The testimony of *John C. Shaw* was objected to at the trial ; but we hold it to have been legally admissible, being conversation between *Latham* the payee, and *Bradley* and *Cushman,* in relation to the sale to the defendant. *James Moore* also deposes, that in *September,* 1835, he was present at *Cushman's* office, when he, *Latham* and *Bradley* were attempting to adjust their respective claims to the money received or expected from the sale of the bond, and that a controversy arose between them on that occasion. A copy of the bond in the case, shows that they all had an interest in it. If fraud was meditated or consummated, by means of the certificates, there was evidence enough in the case to justify the submission of the question to the jury, whether it was not in pursuance of a combination and conspiracy between the three. This being found or proved, all were implicated in the acts and

declarations of either, in aid of their common object; and the jury were properly instructed upon this point. 2 *Stark.* 402; *Commonwealth* v. *Crowninshield*, 10 *Pick.* 497.

The fact is established, that certificates were procured, applying to a different township, and that they went into the hands of *Latham*, through whose agency the sale was effected. Were these procured for the fraudulent purpose of being palmed off by him, as a true and fair representation of the township, a bond of which he proposed to sell, and which he did sell to the defendants? This is proved by the deponent, *Hoyt*, to whom they were exhibited by *Latham*, when he sought his assistance in the sale of the bond. And we are of opinion, that this testimony was admissible, as showing a general fraudulent design, on the part of *Latham*, to effect a sale, by the aid of these certificates. They might have been procured for a lawful purpose, if *Latham* and his colleagues contemplated a purchase and re-sale of the township, to which they really applied. The exhibition of them to *Hoyt*, as referring to that described in the bond, showed that they were obtained and used for the purposes of deception.

It has been contended, that if they were thus used, in the negotiations made or attempted with *Hoyt*, that fact has no tendency to prove a similar deception practised upon the defendant. But if it is evidence of a general design to deceive any one, who could thus be drawn in to make the purchase, it has that tendency. And such an inference is well warranted from the testimony. They were exhibited to the deponent, to induce him to aid in the sale of the bond generally, as accompanying documents. The same witness, in answer to an interrogatory put by the plaintiff, deposes, that at that period such representations were the principal inducements, operating upon purchasers. The defendant was led to promise a large sum of money, for what had in fact no real value. He resists payment on the ground of fraud. As a part of his proof upon this point, it was competent for him to show, that the promisee went into the market with fraudulent documents, to aid him in the sale of that, which constitutes the consideration. Upon examining the testimony objected to, we find nothing inadmissible of sufficient importance to invalidate the verdict, rendered for the defendant.

*Exceptions overruled.*