## BENJAMIN T. BLODGETT *v.* IRA MORRILL.

Where it appeared, that there was in existence a religious association, incorporated under the statute, who were the owners of a meeting house, and a subscription was made, payable to " the Treasurer of said society," "for the purpose of building a new meeting house for said society," or repairing the old one, as the subscribers might determine, the house, when rebuilt, or repaired, to be under the control of the society, and the subscribers were to appoint a committee to superintend the expenditure of the money, and each subscriber was to be entitled to one vote for every share, of twenty five dollars each, subscribed by him, and it was also provided, as one of the conditions of subscription, that the subscribers should receive back, in proportion to their respective subscriptions, whatever the pews should sell for, it was held, that the promise of the subscribers, to pay the several sums annexed to their names respectively,

---

Blodgett *v.* Morrill.

---

was not a promise to the society, but to the individual who held the office of treasurer of the society, entitling him to receive and hold the money as trustee for the *subscribers ;* and that a suit against a subscriber, to recover the amount of his subscription, was well brought in the name of the individual who held such office of treasurer.

-And it was also held, that the defendant was not entitled to prove, in such suit, that he signed the subscription paper merely upon the assurance of the agent, who presented it to him, that he wanted his signature to influence others to sign, and that he should never be called upon to pay the amount subscribed by him. Even if such contemplated fraud would have the effect to release subsequent subscribers,—which is very doubtful,—the defendant, who was party to the fraud, could claim no benefit from it.

Neither does it constitute any defence, in such suit, that another subscriber, who signed previous to the defendant, had been induced to sign by assurances, given by the agent, similar to those made to the defendant, but had in fact, upon being required, paid the full amount signed by him.

This case distinguished from that of *Middlebury College* v. *Adm'r of Loomis,* 1 Vt. 189, and *Middlebury College* v. *Williamson,* 1 Vt. 212.

Assumpsit upon a subscription for rebuilding, or repairing, a meeting house. Plea, the general issue, and trial by jury, June Term, 1846,—Kellogg, J., presiding.

On trial the plaintiff gave in evidence the subscription paper, to which the defendant conceded he had signed twenty five dollars. The paper recited, that, whereas the Congregational Society in Randolph were making efforts to provide themselves with a better meeting house, and must raise the funds therefor by voluntary subscription, the subscribers agreed to pay to the treasurer of said society the sums annexed to their names respectively, for the purpose of building a new meeting house for said society, or thoroughly repairing the old one, as the subscribers should determine, by vote, at a meeting to be held at a specified time and place. And the conditions attached to the subscriptions were, that the subscribers should appoint a committee to superintend the expenditure of the tax, in the manner designated by their vote,— that the subscriptions should be divided into shares of twenty five dollars each, and each subscriber should be entitled to one vote for every share subscribed by him,—that the house, when completed, should be at all times under the control and for the use of the said Congregational Society,

but should be opened for attending funeral services, or other extraordinary occasions of public religious worship, at the request of any of the stockholders, whenever the society should not want it for any of their stated or previously appointed meetings,—and that, upon the sale of the pews, the subscribers should be entitled to receive the whole amount of their respective subscriptions, or a *pro rata* proportion thereof, as the case might be. And the plaintiff also proved, that he was treasurer of the said Congregational Society, and that the meeting honse had been completed in all respects agreeably to the terms of the subscription.

The defendant offered to prove, that, at the time of subscribing, he objected to doing so, for the reason that he was not a member of the Congregational Society, and did not attend meeting with them, and that he did not sign, until the agent, who procured the subscriptions, had assured him, that he wanted his signature to influence others to sign, and that, if he would sign, he should never be called on to pay. To this testimony the plaintiff objected; but it was admitted by the court. The defendant also called J. R. Pember as a witness,—who testified, that the same agent presented the subscription paper to him, before the defendant had signed, and wished him to subscribe for the purpose of inducing others to subscribe, and assured him, that, if he would subscribe, he should not be called upon to pay, but it should be optional with him, whether to pay, or not, and that he did subscribe twenty five dollars, and had paid the same in full. To this evidence, also, the plaintiff objected; but the objection was overruled by the court.

The plaintiff requested the court to instruct the jury, that, even if they should believe, that the agent did promise the defendant, that he should not be called upon to pay his subscription, yet that such promise would be inoperative, as against the written contract of the defendant, and was not fraudulent upon subsequent subscribers, and could not avail this defendant; and also, that the facts testified to by Pember could not operate as a defence in this suit,—that inasmuch as the subscription paper contemplated raising no particular, or limited, sum, in default of which the subscribers should not be held, nor an excess of which would entitle the subscribers to a drawback, and inasmuch as Pember did pay his subscription in full, any conversation between the agent and Pember, or any promise

made by the agent to Pember, at the time of subscribing, could not prejudice the subsequent subscribers, nor render their subscriptions void.

But the court charged the jury, that if they should find, that the agent procured the subscription of the defendant, for the purpose of obtaining other subscriptions upon the faith of it, and, to induce the defendant to sign, did promise and assure him, that he should not be called upon to pay his subscription, they should return their verdict for the defendant;—and that, if they should find, that the agent, at the time of obtaining the subscription of Pember, and for the purpose of obtaining other subscribers to sign upon the credit of it, did absolutely promise Pember, that he should not be called upon to pay his subscription, and did thereby induce Pember to sign, that would be a fraud upon all subsequent subscribers,—of which the defendant was admitted to be one,—and they should return their verdict for the defendant.

Verdict for defendant.   Exceptions by plaintiff.

*Hebard & Steele* for defendant.

1. This action cannot be sustained in the name of the treasurer of the society.   The promise was not made to Blodgett, nor for his benefit.   *Hinds* v. *Stone*, Brayt. 230.   *Arlington* v. *Hinds*, 1 D. Ch. 431.   1 Chit. Pl. 5.   *Piggott* v. *Thompson*, 3 B. & P. 147. *Gilmore* v. *Pope*, 5 Mass. 491.   *Mann* v. *Chandler*, 9 Mass. 335. 7 Johns. 112.   *Buckbee* v. *Brown*, 21 Wend. 110.   *Sailly* v. *Cleaveland*, 10 Wend, 156.   *Gunn* v. *Cantine*, 10 Johns. 387. *Treasurer of Vt.* v. *Cross et al.*, 9 Vt. 289.   The subscription was made, to provide the Congregational Society with a meeting house, which was to be at all times under their control and for their use.

2. The evidence, that the defendant signed under an assurance that he should not be called upon to pay, was correctly received. There was no *real* consideration for the promise, and therefore, if the promise can be entertained in law, it must be received subject to all the limitations and restrictions imposed upon it at the time. The assurances given to the defendant were fraudulent on the part of the agent, and vitiate the whole subscription.   *Middlebury College* v. *Adm'r of Loomis*, 1 Vt. 189.

Blodgett v. Morrill.

3. The charge of the court, upon the testimony of Pember, was strictly within the law of the two cases of *Middlebury College* v. *Adm'r of Loomis*, 1 Vt. 189, and *Same* v. *Williamson*, Ib. 213. It makes no difference, that Pember afterwards paid his subscription,— since he was under no obligation to pay it.

4. If this can be regarded as a promise to the plaintiff, then the suit must fail for want of consideration. The defendant gained nothing by his promise, and hoped to gain nothing. The plaintiff lost nothing, and was not subjected to any inconvenience, or charge, by reason of the promise. Chit. on Cont. 30. *Boutelle et al.* v. *Cowden*, 9 Mass. 254. *Limerick Academy* v. *Davis*, 11 Ib. 113.

————— for plaintiff.

The testimony offered should not have been received; for the subscription was a written contract, on good consideration,— *Univ. of Vt.* v. *Buel*, 2 Vt. 48 ; *Treasurer of Vt.* v. *Cross*, 9 Vt. 289,— and the testimony offered tended directly to avoid it. *Jones* v. *Webber*, 1 D. Ch. 215. *Brown* v. *Bebee*, Ib. 227. *Bradley* v. *Anderson*, 5 Vt. 152. *Farnham* v. *Ingraham*, Ib. 514. *Bradley* v. *Bentley*, 8 Vt. 242. *Isaacs* v. *Elkins*, 11 Vt. 679. *Hatch* v. *Hyde*, 14 Vt. 25. *Gilman* v. *Moore*, Ib. 457. If the testimony tended to show a conspiracy between the parties, to defraud the other subscribers, this defendant could not avail himself of it. *Peaslee* v. *Barney*, 1 D. Ch. 331. *Martin* v. *Martin*, 1 Vt. 91. *Gifford* v. *Ford*, 5 Vt. 532. The cases of *Middlebury College* v. *Loomis* and *Same* v. *Williamson* were very different from this in many respects.

The opinion of the court was delivered by

REDFIELD, J. This is an action upon a subscription to build a meeting house. The subscribers seem to have been merely an association, and not a corporation, organized under the statute. There seems to have been a corporation, probably, or an association, existing before this time in the town of Randolph, under the name of the Congregational Society in Randolph. This subscription, however, seems to have been made wholly independent of the society, and not in any sense under the control of the society, except that the house, when rebuilt, or repaired, was to be under the control of that society.

65

Blodgett *v.* Morrill.

1. The subscribers were to determine, whether a new house should be built, or the old one repaired, and in what manner; and were also to appoint a committee to superintend the expenditure of the money. The votes were to be upon shares of $25 each. The subscribers were to receive back, inproportion to their subscriptions, whatever the pews should sell for, to the full amount of their subscriptions. We think, then, the fact, that the subscriptions were made payable to the plaintiff, who was described as treasurer of the society, is not to be understood as a promise to the society, but to the plaintiff, as a trustee for the *subscribers*,—it being necessary to name some one for that purpose, as a mere partnership cannot collect of each other, *at law*, where the same person would be both plaintiff and defendant. This, in principle, seems to be precisely the case of *Smith* v. *Burton*, 3 Vt. 233. We think, then, the action is well brought in the name of the plaintiff.

2. The testimony offered in defence of the action, that the defendant was induced to sign the subscription only upon the assurance of the agent, "that he wanted his signature to influence others to sign," and that " he should never be called upon to pay," is insisted upon in two views. 1. As showing, that the defendant never expected to pay the sum subscribed, and that the defendant was only induced to sign the paper, upon the assurance, that he should not be required to pay. In this view it is directly contradictory to the written stipulation, and could no more be received, than parol evidence of a promise not to collect a promissory note, or to accept a less sum, or payment in some different mode from that specified in the contract. It is a proposition so plain, as to require no illustration, in this view. 2. It is urged, that this contract contemplated a fraud upon the other subscribers, and so cannot be enforced. Contracts ·of that character are sometimes enforced, and sometimes not; but they are never set aside, either in law, or equity, on account of the party, who was himself consenting to the fraud. *He is not deceived.* Courts generally so determine suits upon such contracts, as to defeat the contemplated fraud,—whether that can best be done by allowing or denying the remedy. Such contracts are always void, as to those persons whose rights are attempted to be affected by the fraud. Here the alleged fraud consisted in the agreement not to enforce the subscription. This portion of the contract was in

Blodgett *v.* Morrill.

bad faith, it is said.  Perhaps it is so.  But if so, the defendant is equally in fault with the agent; the rest of the association knew nothing of any such secret agreement.  The defendant knew the subsequent signers were to be decoyed by his name.  Clearly, then, *he* ought to be held to *his* contract.  And the only sure mode of defeating the *contemplated fraud* is to compel the defendant to do, as he gave the other members of the association to believe he intended to do; that is, to make him keep his promise to the sense, as he made it to the sound.

We think, indeed, that it is very doubtful, whether this device of having nominal subscriptions, even if the agent had given a writing to that effect, is any such fraud as would release the subsequent sbscribers; each subscription being in its nature an independent contract; and one having no legal right to depend upon another. We do not say such a fraud would not release those attempted to be misled by it.  But. clearly the defendant was not deceived, but attempted to deceive others.

This subject may be illustrated by the case of secret contracts between the creditor and the principal, but kept secret from the surety, or guarantor ;—such secret contract will release the surety, but still leaves the principal bound, the same as before.  So, too, if A. agree to give B. a certain sum for goods, in advancement of C., any secret agreement between B. and C., that the latter shall pay a farther sum, is void, as a fraud upon A., and B. cannot recover such farther sum.  The secret agreement, which is a fraud upon third persons, is held void, and the main contract enforced ; so here, we do the same.  *Jackson* v. *Duchaire,* 3·T. R. 551.  The same rule is applied to secret agreements, by which a debtor, in compounding with his creditors, is induced to give a secret contract to pay some more than others.  The secret contract is held void ; but that does not affect the main contract.  In mercy, then, to the defendant, to prevent his accomplishing a contemplated fraud, we think he should be compelled to pay this subscription, so far as this part of the defence is concerned.

3. The third ground of defence, that the agent made a similar agreement with Dr. Pember, which was a fraud upon the defendant, is nearly answered by what has been already said.  1. If such contract were no defence for Dr. Pember, the defendant clearly could

not complain, unless the agent actually did release the subscription, —which is not pretended. 2. The secret agreement was one, which could not be enforced, either in law, or equity; and so Dr. Pember *regarded it*, and actually paid his subscription when required. 3. But if it were actually a binding contract, and had been acted upon, and the subscription discharged, it would not, in my mind, be such a fraud, as would release the defendant. The essence of the fraud consists in representing, expressly, or impliedly, that the subscriptions are *all real*. Now no such representation is claimed as expressly made, and none certainly is implied from the conversation had with the defendant,—but the contrary.

If the defendant were told, that his own subscription was a mere sham, to impose upon others, what right had he to expect, that it was not so with any one or all of the others, which went before? He might, perhaps, suppose that some were genuine. But why should he be the only decoy used to bait others. He was at least put upon inquiry, and might have asked, if the other subscriptions were all genuine. But the case is decided mainly upon the other ground, that Pember's subscription was genuine and binding in law. The Middlebury College cases are totally different. In those cases there was a certain sum to be raised, and then all over that sum was to go to reduce the subscriptions made,—so that each subscriber had an interest in all the others. The persons sued, in those cases, were not the *decoys*, but the persons *decoyed*,—not the *deceivers*, but the *deceived*. The subscriptions, in those cases, were actually discharged by writing; so that no question arose as to controlling a writing by oral testimony.

Judgment reversed and case remanded.