WATER VALLEY MANUFACTURING CO. *v.* M. J. SEAMAN.

1. GUARDIANS AND TRUSTEES.    *Powers over trust funds.*
   Neither a guardian nor an administrator can release without payment any valid security belonging to the trust estate in his hands.    Nor can a trustee make such release on property mortgaged for the benefit of infants.

2. CORPORATION.    *Subscriptions.*
   The property of a corporation was incumbered by a trust deed, and the trustee released (which release was duly recorded) a portion of the trust property, agreeing to look only to the portion not released for payment.    The corporation obtained subscriptions to its stock on the assurance that there was no incumbrance on the property so released, and the subscriber for stock relied on this assurance.    *Held,* that the subscription was obtained on misrepresentation, and that recovery could not be had thereon.

3. EVIDENCE.    *Contract procured by fraud.*
   Where a party has been entrapped into a contract by false representations, evidence is not admissible to show that if the defendant will

pay under the contract, notwithstanding the fraud, his money will be so used that he will sustain no harm.   This case distinguished from *Cook* v. *Whitfield*, 41 Miss. 541.

4. STOCK.   *Forfeiture.*

Repeated declarations by a corporation, that the stock of delinquent subscribers will be forfeited unless payment is made by a particular time, does not amount to forfeiture.   To effect this there must be an actual declaration of forfeiture.

5. SAME.   *Payment of percentage on subscription.*

Where the charter does not require the payment of a certain amount at the time of subscribing for stock, but the agreement of subscription does, the failure to make such payment does not vitiate the subscription.

ERROR to the Circuit Court of Yalobusha County.

Hon. J. W. C. WATSON, Judge.

The opinion of the court states the facts fully, excepting as follows, viz. : —

1. The charter of the plaintiff in error did not require a payment of one per cent at the time of subscribing, but the contract of subscription did.

2. Subscriptions were made early in 1873, and the calls on the whole of it were made soon after, payable in instalments. Subscribers failed to pay ; and some two years afterwards the corporation repeatedly adopted resolutions, that, if payment was not made at a time designated, the stock would be forfeited.   Copies of these resolutions were served on the delinquent subscribers, but no resolution was adopted declaring an actual forfeiture.

*Walter & Walter*, for the plaintiff in error, insisted that the judgment creditors who had declared that they released a portion of the land of the corporation from their judgments, were estopped to enforce them as to the property released against subscribers who had taken stock on the faith of such declarations.   They cited on the doctrine of estoppel *Pickard* v. *Sears*, 6 Ad. & E. 469 ; *Gregg* v. *Wells*, 10 Ad. & E. 54 ; *Presbyterian Church* v. *Williams*, 9 Wend. 147 ; *Dezell* v. *Odell*, 3 Hill, 215 ; *Land* v. *Lacoste*, 5 How. (Miss.) 471 ; *Montgomery* v. *Dillingham*, 3 S. & M. 647 ; *Dixon* v. *Green*, 24 Miss. 632 ; *Cock* v. *Kuykendall*, 41 Miss. 65 ; *Tobey* v.

*Chapman*, 13 Allen, 123 ; *Adams* v. *Brown*, 16 Ohio St. 75 ; 1 Greenl. Evid. 207. Even silence will work an estoppel. *Chapman* v. *Chapman*, 59 Penn. St. 214 ; *Fletcher* v. *Holmes*, 25 Ind. 458.

The same rule is applicable to a guardian or trustee who releases property embraced in the trust, and that the representation, therefore, of a corporation to procure subscriptions, that the property released was not incumbered, was not a fraudulent representation.

If, however, the release was recorded, and thus all parties had notice of it, but were mistaken as to its legal effect, such mistake would not vitiate such subscription.

If the subscribers would pay up their subscription, and start the factory, the property not released would pay all debts, and the subscribers should not be permitted to avail themselves of a state of things produced by their failure to comply with their contract. *Cook* v. *Whitfield*, 41 Miss. 541 ; *Morrison* v. *Ives*, 4 S. & M. 652.

Fifty thousand dollars of stock was not required to be subscribed, under the charter, before calls could be made and collected. Acts 1867, p. 692 ; *Selma, &c. Railroad* v. *Anderson*, 51 Miss. 829 ; *Payne* v. *Bullard*, 23 Miss. 88.

Failure to pay the one per cent at the time of subscribing does not vitiate the subscription, as the contract only, and not the charter, requires this. *Hayne* v. *Beauchamp*, 5 S. & M. 515 ; *Fizer* v. *Miss. & Tenn. Railroad*, 32 Miss. 359.

There was no actual declaration of forfeiture of stock, but only threats that if calls were not paid by a specified time it would be forfeited. There must be an actual declaration of forfeiture. *Railroad Co.* v. *Rodegues*, 10 Rich. 278 ; *Freeman* v. *Winchester*, 10 S. & M. 577 ; Lacey's Railroad Digest, 634, §§ 85–88.

*B. H. Tabor*, on the same side, filed an elaborate brief on the facts presented in the record.

*J. Z. George* and *H. K. Martin*, for the defendant in error.

The question in the case is not what creditors of the corporation were estopped from enforcing their debts, but were there any creditors. The corporation represented that there were no debts ; and Seaman subscribed under this statement. It

was material, and was false.   McConnico and Berglund were each creditors at the time, and now have judgments against the plaintiff in error on these debts.   The subscription taken under the circumstances was void.   The question of good faith is not involved.   The representation was false, and vitiated the contract.   *Selma, &c. Railroad* v. *Anderson*, 51 Miss. 829.   In *Walker* v. *Memphis & Ohio Railroad*, 34 Miss. 245, the statement of the agent was only an opinion as to values and results, or as to matters controlled by the charter.   Here it was a statement as to existing facts, and was false.

But the representations were also false in view of the deed of trust held by Mrs. Wagner, as guardian, for the benefit of her children.   Neither she nor the trustee had the power to release any security held by them for trust funds of their wards.   The attempted release was itself a nullity, and the trust still exists over the property.   Representations to the contrary were false, and relieved the defendant in error from a subscription made whilst relying on these representations.

The judgment below must be affirmed, because the charter (Acts 1867, p. 692) fixes the capital stock at $50,000, and not more than $45,000 was subscribed.   Counsel reviewed the act fully, and insisted that the clause which authorizes the corporation to commence business when $16,000 is paid in does not dispense with the necessity of having the $50,000 of capital stock actually subscribed before calls can be made.   *Selma, &c. Railroad* v. *Anderson, ubi supra ;* 6 Pick. 33.

The court below rightly excluded the evidence offered to prove that if the subscribers for stock had paid the calls the factory would have been started, and the value of the property not released would have been increased sufficiently to have paid the indebtedness of the company.   This evidence was too speculative in its character, and, besides, furnished no justification to the plaintiff in error in making false statements, and perpetuating a fraud on the defendant in error.

CHALMERS, J., delivered the opinion of the court.

The Water Valley Manufacturing Company, which consisted of eleven persons, finding itself embarrassed in its operations for want of means, sought and obtained from the legislature an

amendment to its charter, by which its shares of capital stock were reduced in value from $500 to $50 per share. For the purpose of encouraging subscriptions, they then resolved to put their buildings and twenty acres of land into the new organization contemplated, at a valuation of $19,250, to be ratably divided among the eleven old stockholders, and against this sum were to be set the new shares that might be taken by the incoming subscribers. Two of the old stockholders held considerable debts against the corporation, and they agreed to release the buildings and the twenty acres of land which were put into the new organization, and to look alone to other lands owned by the old company. One Mrs. Wagner held, as guardian of her minor children, and as administratrix of her husband's estate, a trust-deed for $4,000 on all the property of the company. She, too, agreed to release the twenty acres and buildings, and to look alone to the other lands, and executed a formal release in writing to this effect, which was duly recorded. These matters having been arranged, a public meeting of the citizens of the town and vicinity was called, which the officers and directors of the company attended, and there proclaimed these things, and urged the people to subscribe, assuring them that there no longer remained any debts against so much of the property as it was proposed to put into the new enterprise. They also sent out a special canvassing agent to procure subscriptions, who everywhere announced, as he was instructed to do, that the organization would no longer be crippled by these old debts.

The defendant Seaman was induced by these assurances to subscribe for two shares of the capital stock, to enforce payment of which this suit is brought. His defence is that these assurances, upon which he relied, and upon which he had a right to rely, were false in fact; that one of the old stockholders, who pretended to have released his debt, except as to the outside lands, had successfully asserted in the courts a claim for $2,000, under a mechanic's lien, against the building, and would have sold the same, had not Mrs. Wagner, who pretended to have released her mortgage, prevented a sale, by enjoining him, setting up her own superior rights under her mortgage; and that the administrator of the other old stock-

holder (he being dead) had also brought suit, and recovered judgment upon his claim, which was pretended to have been released.

The answer to this on the part of the company (the case originating in the magistrate's court, and all the pleadings being oral) is, that these creditors were equitably estopped, as against the new subscribers, from enforcing their debts; that the new subscribers, or the company acting in their behalf, could and would enjoin a prosecution of these demands against any thing save the outside lands belonging to the old company; and that inasmuch, therefore, as the new subscribers never could be damnified by these demands, the attempted inequitable enforcement of them constituted no ground to resist payment of the subscriptions.

If we concede that this position is sound with reference to the suits brought by the two original stockholders, it certainly is not as regards the Wagner mortgage. That was given to secure money belonging to the children, of whom Mrs. Wagner was guardian, and the estate of which she was administratrix. Neither a guardian nor administrator can release without payment any valid security belonging to the trust estate in his hands; and the debt secured by the mortgage in this case remained as much an incumbrance on the whole property after Mrs. Wagner's void release as before. As to that debt, therefore, there was a clear misrepresentation made to the subscribers, under all these circumstances, which, in *Selma, &c. Railroad* v. *Anderson*, 51 Miss. 829, it was said would avoid the subscription.

It was sought to obviate this by an offer to show that, if the resisting subscribers (there are $25,000 of subscription depending upon this case) had paid up their subscriptions, it would have put the enterprise into such a condition of prosperity that the outside lands (lying immediately adjacent to the town of Water Valley)' would have enhanced in value to such an extent as to have paid off the Wagner mortgage and all other debts, and thus preserve intact the property put into the new organization. This testimony was properly excluded.

This is not a case, as argued by counsel for the appellant, where one party to a contract is setting up a failure of consid-

eration, produced by his own failure to pay, which was held inadmissible in *Cook* v. *Whitfield*, 41 Miss. 541.   The defence here is that the party has been entrapped into a contract by false representations ; and it is sought to meet this defence by showing that, if the defendant will pay, notwithstanding the fraud, his money will be so used that he will sustain no harm. This is inadmissible.   The defence is complete when the fraud is shown ; and it cannot be overcome by any considerations of future possible advantages to arise from an enforcement of the contract.

It is unnecessary to consider the other points discussed ; but we are specially requested to pass upon the questions whether there had been a declaration of forfeiture of the stock, as shown by the minutes of the directory, and whether the subscription would have been void if the subscriber had failed to pay one per cent at the time of making it.   We answer both questions in the negative.   The company had the right, under the charter, to declare a forfeiture of stock for non-payment; but it does not appear that they exercised it, though there was a threat to do so in some of their resolutions.   The obligation to pay one per cent at date of subscription was not a requirement of the charter, and, therefore, a failure to pay it does not avoid the contract.   *Hayne* v. *Beauchamp*, 5 S. & M. 515, 538.                                    *Judgment affirmed.*