# Montgomery Southern Railway Co. *v.* Matthews.

*Action by Railroad Corporation, on Subscription for Stock.*

| | |
|---|---|
| 77 | 357 |
| 93 | 199 |
| 93 | 520 |
| 93 | 553 |
| 77 | 357 |
| 96 | 532 |
| 77 | 357 |
| 100 | 182 |
| 102 | 352 |
| 77 | 357 |
| f125 | 482 |
| 77 | 357 |
| 131 | 376 |

1. *Fraudulent representation; matters of opinion, or matters equally open to both parties.*—The mere expression of an opinion can not be a fraudulent representation, unless falsely made, with intent to deceive, and actually deceiving; nor can it constitute a fraud, vitiating a contract thereby procured, when it relates to a matter equally open to both parties.

2. *Subscription for stock in railroad company, procured by fraud of agent.*—A subscription to the stock of an incorporated railroad company, procured by the fraud of the company's agent soliciting subscriptions, may be defeated on the plea of fraud, when the company attempts to enforce it by suit.

3. *Fraudulent representations to other persons.*—There are cases of fraud, and other unlawful acts, particularly acts of the same general character continuous in their nature, where it is permissible to prove other similar transactions occurring at or about the same time, as shedding some light on the particular transaction in controversy; but, in an action against a subscriber for stock in a railroad company, who defends on the ground of fraudulent representations by the company's agent in procuring his subscription, he cannot be allowed to prove similar representations made by said agent to other subscribers in the same neighborhood.

4. *False representation constituting failure of consideration.*—A state-

[Montgomery Southern Railway Co. v. Matthews.]

ment as of fact by the vendor of an article, on which the purchaser has a
right to rely, and on which he does rely, purchasing on the faith of it,
constitutes, if false, a good defense to an action for the purchase-money,
though not known by the seller to be false; and this, not on the ground
of fraud, but of failure of consideration; but this principle does not apply
to a statement which is merely the expression of an opinion.

5. *False representations by agent, as to location and completion of road.*
Representations by the agent of a railroad corporation, soliciting sub-
scriptions for stock from persons living along the contemplated route of
the road, as to its intended location, and the time within which it will
be completed to a particular place, are but the mere expression of an
opinion, and neither constitute a fraud, nor are available as a defense to
an action on a subscription for stock made on the faith of them, unless
known by the agent to be false, and made by him with intent to
deceive.

6. *Same; injunction against enforcement of subscription.*—Although
an action on the defendant's subscription for stock can not be defeated on
the ground of fraud, when the representations of the corporation's solic-
iting agent were merely the expression of an opinion as to the probable
location and completion of the road; yet, if the agent further represented
that the money subscribed would be refunded unless the road was so
located and completed, and he was authorized to make these representa-
tions, the action will, *it seems,* be enjoined in equity, on proof of the in-
solvency of the corporation and its abandonment of the work before com-
pletion.

APPEAL from the Circuit Court of Crenshaw.

Tried before the Hon. H. D. CLAYTON.

This action was brought by the appellant, a domestic corpo-
ration, against Eli Matthews and M. T. Matthews; was com-
menced on the 14th February, 1883, and was founded on a
writing signed by the defendants, which was in these words:

"Crenshaw County, Ala. July 26th, 1881.  On the first day
of December, 1882, we promise to deliver to the Montgomery
Southern Railway Company two bales of middling cotton, of
500 lbs. each, at the Alabama Warehouse in the city of Mont-
gomery, the proceeds of which is to be credited to our account,
as payment upon two shares of the capital stock in said rail-
way company subscribed by us; and in case we make default
in the delivery of said cotton, or any part thereof, as above
provided, then we hereby agree to pay to said Montgomery
Railway Company, in money, the market price of such cotton
in said city of Montgomery on said day; and to secure the
faithful performance of this contract, we hereby waive all ex-
emptions to which we are or may then be entitled under the
laws or constitution of this State."

The complaint set out this instrument, averred the failure of
the defendants to deliver the cotton as stipulated, whereby
they became liable to pay the money as specified, and claimed
the money, with interest.  The defendants pleaded the general
issue, and several special pleas, some of which alleged that the
writing sued on was void for fraud, having been procured by

VOL. LXXVII.

the false representations of the plaintiff's agent. These representations were stated in the several pleas in these words: (3.) "Before the making and the execution of said note by these defendants, the said plaintiff's agent, who was M. L. Kirkpatrick, represented to these defendants that the said railroad, for stock in which the said note was given, would run near *his* land, within from one to two miles thereof, substantially along the 18th range line, and would be built within two years from the date of said note, to a point near Rutledge, and below the lands of these defendants; and defendants aver that more than two years have elapsed since the making of said note, and that plaintiff has not built or run said railroad near the land or place of business of these defendants; nor has said road been built to a point near Rutledge, and below the lands of these defendants; and said representations were false and fraudulent, and without these representations they would not have given said note." (4.) "Said note is void of fraud, in this: That at and before the execution of said note by these defendants, M. L. Kirkpatrick, who was the plaintiff's agent, represented to these defendants that said railroad would be built to Rutledge, or within three miles of Rutledge, within two years at furthest from the date of said note; and defendants aver that, believing said representations to be true, and relying on the same, they made and executed said note," &c.; with the additional averment that said road was not so built, and said representations were fraudulent. (5.) "That said note was procured by the false and fraudulent representations of M. L. Kirkpatrick, who was at the time the plaintiff's agent in procuring subscriptions to the capital stock of said corporation, in this: Said Kirkpatrick represented to these defendants, before they signed said note, that said railroad would be built to Rutledge, or within three miles of Rutledge, in said county of Crenshaw, within two years at furthest from the date of said note, and would be built on, or substantially on the 18th range line, and that said road would run near the lands of these defendants;" which representations, it was further averred, were false and fraudulent, but were believed by defendants to be true. The 6th, 7th, 8th and 9th pleas set up a failure of consideration; alleging, in varying phraseology, that the consideration was the location and completion of the road according to the representations of plaintiff's said agent, and that the road had not been so located and completed.

The plaintiff demurred to these special pleas, assigning numerous grounds of demurrer to each: to the 3d, nine; to the 4th and 5th, twenty-nine; and to the 6th, 7th, 8th and 9th, the same as to all the former. One of the causes of demurrer specially assigned to each plea was, " that the representations

set up as a bar to plaintiff's right to recover were mere matters of opinion of said agent." The court overruled the demurrers, on all of the grounds specially assigned, and issue was joined on all of the pleas.

On the trial, as appears from the bill of exceptions, the defendants thus testified in their own behalf: "At the time said obligation now sued on was executed by them, they met said Kirkpatrick (who, it was proved, was plaintiff's agent to solicit subscriptions to the capital stock of said corporation), in the public road, and he began to solicit subscriptions from them for said road. Defendants declined to take any stock, and said that they did not care for a road over in the mud in Montgomery county; that they did not want to go through the mud a part of the way, and did not feel able to pay for others to enjoy the road; but that they were willing to subscribe for stock, upon the condition that they were not to pay anything until the road was built to Rocky Mount, or the county line between Montgomery and Crenshaw counties. Kirkpatrick then stated, that he was satisfied the road would be built to Rocky Mount within a short time, and would be built to Rutledge, or within three miles of Rutledge, within eighteen months, or two years; that the way to get the road was to put all the little sums together, and let the president and officers of the road see that we wanted it, and it would be built; that he knew Dr. LeGrand and *Uncle Joe*, and the road would be built. Defendants then stated, that they wanted the condition inserted in the contract, that they were not to pay anything until the road reached Rocky Mount; and Kirkpatrick replied, that the road would be built to, or within a mile of Rocky Mount, by the time the note fell due, and would be built to Rutledge, or near there, within eighteen months, or two years; that if it was not built to Rutledge, or near there, the people in Crenshaw county who subscribed should have their money back; and that the road would be built along the 18th range line, which was within a mile or two of their lands. Kirkpatrick also pulled out a large bundle of contracts for stock, named several parties who had taken stock, and said that he wanted to carry up all the contracts alike, and it would make no difference if the condition was not inserted, as the note or contract would be void if the road was not built to Rocky Mount by its maturity. Upon this condition, and these representations, defendants said that they would take the stock and give their notes; and Kirkpatrick thereupon filled out the notes, and defendants signed them without reading or hearing them read over. *Without the statement and representation that the road would be built to Rocky Mount by the maturity of the note, or it would be void, and that the road would be built to Rutledge, or within three miles of Rutledge, within*

*eighteen months, or two years at furthest, defendants would not have signed or given said note.*" The plaintiff objected to the admission of the statement shown by the words italicized, and excepted to the overruling of their objection.

" The defendants were allowed to prove, also, by several witnesses, against the objection and exception of the plaintiff, that they were, each of them, subscribers to the capital stock of said plaintiff corporation, and made their subscriptions to said M. L. Kirkpatrick, as plaintiff's agent, a short time before the date of said note sued on ; and that said Kirkpatrick represented and stated to each of them that said road would be built to Rutledge, or within three miles of Rutledge, within eighteen months, or two years at furthest, from the giving of their several notes, and that the money paid by them would be refunded, if it was not so built." To the admission of this evidence an exception was duly reserved by the plantiff.

" Said Kirkpatrick testified for plaintiff, in rebuttal, substantially, that he was plaintiff's agent in soliciting subscriptions to its capital stock ; that he at no time represented, as a fact, that the road would be built to any particular point, or upon any particular line ; that he did not represent to the defendants that it would be built to Rocky Mount, but did express to them his opinion that it would be built to Rutledge at some time, but did not say any particular time, and did not tell them that he would defend them against said note if not so built ; also, that at the time he took defendants' said note, or obligation, he had authority from the company to state that, if said road was not built to Rutledge, the money would be refunded to the people of Crenshaw county. He further testified, also, that the road was built only to ' Bell's Store ' in Montgomery, about eleven miles from Rocky Mount ; that it had not been located at all beyond said store, and the money had all given out ; that plaintiff had ceased to work on the road in June, or July, 1882, and there was no prospect of the road going beyond said store ; that the subscriptions in Crenshaw county amounted to about $18,000, and, if all collected, would not extend the road three miles."

The court charged the jury, at the request of defendants—

1. " If the jury believe, from the evidence, that Kirkpatrick, as plaintiff's agent, stated and represented to the defendants as a fact, before the making of the note sued on, that the road would be built to Rutledge, or within three miles of Rutledge, within eighteen months, or two years at furthest from the making of said note ; and that the road has not been built to Rutledge, nor within three miles of Rutledge, within the time stated, but has only been built to ' Bell's Store ' in Montgomery county, about twenty-five miles from Rutledge ; and

that plaintiff has done nothing whatever since June, or July, 1882, to extend or build said road further ; and that without this representation so made, defendants would not have given or executed the note sued on,—then the jury may find for the defendants "

2. "If the jury believe, from the evidence, that Kirkpatrick, as plaintiff's agent, represented to defendants as a fact, at the time the note sued on was given, that the railroad would be built to Rocky Mount by or before the maturity of the note ; and that said note was given upon the condition, that it was not to be paid, and would be void, unless the road was built to Rocky Mount by the maturity of said note on December 1st, 1882 ; and that said road has never been built to Rocky Mount, and plaintiff has done nothing since June, or July, 1882, and is doing nothing to build said road beyond ' Bell's Store,' eleven or twelve miles from Rocky Mount towards Montgomery ; and further, that these representations were false, and that the defendants, without these representations and conditions, would not have given the note sued on,—then they should find for the defendants."

3. "No one can hold an interest procured for him by the fraud of another, any more than if the fraud was committed by himself. And if the jury believe, from the evidence, that Kirkpatrick, at the time he solicited and took the note sued on, was plaintiff's agent for that purpose, and was sent out by plaintiff to solicit subscriptions for stock and take notes therefor. without any limitations as to his authority or power to make representations such as are set out in the pleadings in this case ; and that he did make the representations charged as true and facts, and they were false and fraudulent, and induced defendants to make and give the contract now sued on ; and plaintiff is here seeking to enforce the contract thus procured by the false and fraudulent representations of plaintiff's said agent, if they so believe, the consequences of .such false and fraudulent representations can not be avoided by plaintiff, when they are set up to [defeat] the contract sued on."

The plaintiff excepted to these and other charges given by the court, and requested the following charges in writing : (1.) "If the jury believe, from the evidence, that said Kirkpatrick made representations of facts to the defendants, which induced them to subscribe to the capital stock of said railroad company, and the facts as represented were of matters which were as open to the inquiry of the defendants as of said Kirkpatrick ; then the defendants can not avail themselves of the representations so made, as a defense to this suit." (2.) "If the jury find, from the evidence, that Kirkpatrick made representations of facts as are set out in the defendants' pleas in this

[Montgomery Southern Railway Co. v. Matthews.]

case, which were an inducement to them to sign the note sued on; then it was the duty of the defendants to exercise reasonable diligence to ascertain their truth or falsity, and if they failed to do so, they can not set up the falsity of such representations in bar of the plaintiff's action." The court refused each of these charges, and the plaintiff excepted to their refusal.

The several rulings of the court on the pleadings and evidence, the charges given, and the refusal of the charges asked, are now assigned as error.

JNO. D. GARDNER (and with him SAYRE & GRAVES), for the appellant.—(1.) Representations made by plaintiff's agent to third persons, not in the presence of the defendants, could not have influenced their conduct, and ought not to have been admitted as evidence. (2.) The contract sued on is dated July 26th, 1881, and payable on a day certain, much less than two years from its date. All prior or contemporaneous agreements or stipulations are merged in the writing, and proof of conditions not incorporated in it can not be received to vary or defeat it.—*Railroad Co. v. Cross*, 20 Ark. 443 ; *Railroad Co. v. Posey*, 12 Ind. 363 ; *Eakright v. Railroad Co.*, 13 Ind. 404. (3.) The statements of Kirkpatrick, as alleged in the special pleas, and as proved, were merely the expression of opinions as to future matters, which were equally open to the knowledge and inquiry of the defendants, and could not constitute a fraud in law.—Price on Railroads, 61–2 ; Morawetz on Corporations, § 269 ; *Chamberlain v. Railroad Co.*, 15 Ohio, 225 ; 14 Amer. Law Review, 203.

JOHN GAMBLE, *contra.*—(1.) The declarations and representations of the plaintiff's agent, while soliciting subscriptions for stock, by which defendants were induced to execute the writing sued on, were admissible evidence for them.—*Rives v. Plank-Road Co.*, 30 Ala. 100. (2.) Such representations, being material and false, are a complete defense to the action ; for it is well settled, that no one can hold an interest procured for him by the fraud of another, any more than if the fraud was committed by himself.—*Atwood's Adm'r v. Wright*, 29 Ala. 346; *Rives v. Plank-Road Co.*, 30 Ala. 92 ; *Bowers v. Johnson*, 10 Sm. & Mar. 169 ; *Huguenin v. Baseley*, 2 White & Tudor's L. C. Eq. 64; 32 Miss. 378 ; 20 Vt. 509 ; 7 Ired. Eq. 7 ; 3 Ired. Eq. 219. (3.) Oral proof of these representations may be received, on the ground of fraud, without impugning the rule which forbids the admission of oral evidence to vary or contradict a writing.—*Munroe v. Pritchett*, 16 Ala. 785, and 22 Ala. 501; *Railroad Co. v. Tipton*, 5 Ala. 787 ; *Canal Co.*

[Montgomery Southern Railway Co. v. Matthews.]

*v. Hathaway*, 8 Wendell, 483 ; 3 Hill, 552 ; 6 Monroe, 248 ;
Redf. Railways, § 48; *Henderson v. Railway Co.*, 17 Texas,
560 ; *Exchange Co. v. DeWolf*, 31 N. Y. 273 ; 87 Penn. St.
92 ; 83 Penn. St. 244 ; 9 Amer. Dec. 101. (4.) That Kirk-
patrick's similar representations to other persons in the neigh-
borhood were properly admitted as evidence, see Bigelow on
Fraud, 478–9 ; *Lovell v. Briggs*, 2 N. H. 218 ; *Whittier v.
Varney*, 10 N. H. 291 ; 11 Wendell, 83 ; 16 Maine, 465 ; 120
Mass. 444.

STONE, C. J.—In *Rives v. Montgomery South Plank-
Road Co.*, 30 Ala. 92, the suit was on a subscription to the
capital stock of the plank-road company. The defense was
fraud in procuring the subscription. On the trial, " the de-
fendant offered to prove that, before he ·subscribed for any
stock in said company, and before its organization under its
charter, two of its subscribers for stock, one of whom was after-
wards elected president, and the other secretary of the corpo-
ration, represented to him that the road would be so located as
to pass through his plantation, thereby greatly enhancing the
value of his lands ; that these representations were repeated by
them after their election to their respective offices; and there-
upon defendant subscribed for five shares of the capital stock
of said company ; and that said road, as afterwards located, did
not pass within five miles of defendant's plantation." This
testimony was rejected by the court, on plaintiff's motion; and
the propriety of that ruling was the the sole question presented
in this court. In passing on that question, the majority of
this court said : "We can not doubt that the declarations of
those officers, as offered by the defendant, were relevant and
admissible. Those declarations certainly throw some light upon
one of the material questions in the case ; and to exclude them
is to deny, practically, to the defendant the right to prove the
very basis on which he rests his defense. Until these declara-
tions are proved, it is impossible to show that they were false,
or that they formed an inducement to the defendant to sub-
scribe." It will be observed that, in the case above, we did not
decide that the representation, even if not kept and conformed
to as a promise, was in itself sufficient to avoid the subscrip-
tion. That question was not before us. We simply held that
it was legal evidence—a predicate for further testimony.

An opinion expressed, even if not realized, can not, without
more, become a fraudulent representation.—2 Brick. Dig. 14,
§§ 16, 21 ; *Lake v. Security Loan Asso.*, 72 Ala. 207. If,
however, such opinion is falsely expressed,. with intent to de-
ceive, and does deceive, this constitutes such opinion or repre-
sentation a false statement of fact, and vitiates a contract

[Montgomery Southern Railway Co. v. Matthews.]

thereby procured, unless the representation relates to a matter equally open to both parties. This could not deceive.

In Pierce on Railroads, 61, it is said: "This defense [fraud in procuring a subscription] is usually founded in statements known to be false by its official managers, and made by them, or by agents in their behalf, concerning the financial condition and earnings of the company, the amount subscribed, or other material facts calculated to tempt subscribers. They may be made by officers and agents directly to subscribers, or through a prospectus issued by the company to the public, for the purpose of obtaining subscriptions. . . Equity will set aside a subscription when procured by fraud." And on page 62 it is said: "The subscriber can not defend on the ground of fraud, . . where it declared only opinions instead of facts, or where it declared facts of which the subscriber had means of knowledge." The same doctrine is expressed in Morawetz on Corp. § 309, and in 1 Redf. on Railways, 5th ed. 172–3. See, also, 14 Amer. Law Review, 192–3; *Franklin Glass Co. v. Alexander*, 9 Amer. Dec. 92, Note, 102; *Miss., Ouachita & Red River R. R. Co. v. Cross*, 20 Ark. 443; *Evansville, Ind. & Cl. S. L. R. R. Co. v. Posey*, 12 Ind. 363; *Smith v. R. River Co.*, 2 L. R. Eq. Cas. 262; *Water Valley Man. Co. v. Seaman*, 53 Miss. 655; *Hanover Junction R. R. Co. v. Haldman*, 82 Penn. St. 36; *Crump v. U. S. Min. Co.*, 7 Grat. 352.

In Pennsylvania, the rule that parol testimony can not be received to vary the terms of a written contract does not prevail; and, hence, in that State the rulings are somewhat different.—*Caley v. Phil. & Chester. Co. R. R. Co.*, 80 Penn. St. 363; *Kostenbader v. Peters, Ib.* 438; *Lippincott v. Whitman*, 83 Penn. St. 244. That rule does not prevail with us. *Henderson v. Railroad Co.*, 17 Tex. 560, is, perhaps, the strongest authority that can be found in favor of appellee's views. We are not inclined to go so far.

There can be no question, that if the stock subscription in this case was procured by the fraud of Kirkpatrick, the soliciting agent, the railroad corporation, claiming the benefit of the subscription, must take it tainted with Kirkpatrick's fraud. Story on Agency, § 253; *Corning v. Southland*, 3 Hill, N. Y. 552; *Mead v. Bunn*, 32 N. Y. 275; *Harris v. Delamar*, 3 Ired. Eq. 219; *Meadows v. Smith*, 7 Ired. Eq. 7.

There are cases of fraud, and other unlawful acts, particularly when acts of the same general character are continuous in their nature, where it is permissible to prove other similar transactions occurring about the same time, as shedding some light on the transaction in controversy.—Bigelow on Fraud, 478; *Benham v. Cary*, 11 Wend. 83; *Aldrich v. Warren*, 16 Me. 465; *Lovell v. Briggs*, 2 N. H. 218; *Whittier v. Varney*, 10 N. H.

291; *Blodgett v. Morrill,* 20 Verm. 509. The present case does not fall within this rule.

There is another class of cases, where a statement is made as of fact, and, relying on its truth, a purchase is made on the strength of it, but it turns out to be untrue. Now, if the erroneous statement was as to a matter of substance, and operated as an inducement to the purchase, then it furnishes ground for defending against the purchase, even though the seller honestly believed the facts existed as he represented them to be. This principle rests, not on the doctrine of fraud, but on the ground that the purchaser failed to get what he bargained for, and failed because of the erroneous statement of fact made by the vendor, which he trusted, and had a right to trust. *Munroe v. Pritchett,* 16 Ala. 785, and, to some extent, *Atwood v. Wright,* 29 Ala. 346, illustrate this principle. It can not apply, however, where the representation consists in opinion. That, to be the basis of a legal right, in any case, must be knowingly false, and uttered with intent to deceive. A positive statement, made in the sale of a tract of land, that the line runs at a designated place, if acted on, and turns out to be untrue, misleads the purchaser. If the lands obtained are less valuable than the lands pointed out, he is deceived, and consequently is armed with an appropriate remedy to secure his indemnification. If, however, the representation be made as matter of opinion only, then, to obtain any relief, the purchaser must show that the representation was made knowing its falsehood. Less than an intentional deception, in such conditions, gives no right of action.

One of the grounds of demurrer to all the special pleas is, "that the representations set up as a bar to plaintiff's right to recover were mere matters of opinion of said agent." There are many other grounds, questioning the sufficiency of the pleas in almost every particular. The representations set forth in each of the special pleas relate to matters afterwards to be performed, and could be nothing but opinion. These pleas are fatally bad, because they do not aver that Kirkpatrick did not honestly entertain the opinions he expressed, and the proof on this question is no better than the pleading. The demurrers to the special pleas ought to have been sustained.

Under the principles declared above, many rulings of the court in admitting testimony, and in charges given, were erroneous. We will not particularize, believing, as we do, that what is stated above will furnish a sufficient guide on another trial.

There is a possible phase of this case not covered by what is said above, nor sufficiently averred in the pleadings. Kirkpatrick testified, that he was authorized by the directors to

[Johnson v. Thomas.]

agree with the subscribers to stock living in Crenshaw county, that their money should be refunded to them, if the railroad was not built to a point at or near Rutledge. He did not in terms say he gave such promise. He also testified, that the money was exhausted, and work on the road had progressed only to "Bell's Store," and had long been discontinued. The record fails to show what is the present *status* of the corporation, whether or not it is insolvent, or in active existence, and whether or not it has the means of carrying the road to Rutledge. If the corporation is bankrupt, or has no means of ever constructing the road to Rutledge, it would seem to be a bootless performance, to force the Crenshaw stockholders to pay their subscriptions, to be immediately refunded to them; and if the corporation be insolvent, without power or purpose to complete the road to Rutledge, perhaps it may be defeated and restrained in its attempt to coerce collections, at an expense that might be appalling. We merely throw out these suggestions in the interest of justice and economy. The law takes no pleasure in useless litigation.

Reversed and remanded.