# Jones *v* Coan.

### *Action for Damages for Fraud.*

(Decided June 30, 1906.  41 So. Rep. 757.)

1. *Fraud; Action; Limitations; Jury Question.*—In an action for fraud, where the evidence was uncontradicted that the fraud had not been discovered until within less than a year before bringing the suit, the fact that the plaintiff had an opportunity

to know and ought to have known of the fraud previously, if sufficient to raise an inference against the testimony of want of knowledge of the fraud until less than a year before the bringing of the suit, presented a question for the determination of the jury, and did not authorize the giving the affirmative charge for defendant on the theory of a bar to the action under Section 2813, Code 1896.

2. *Same; Evidence; Sufficiency.*—The evidence examined and held sufficient to sustain a finding that the representations of defendant, or his agent, were false and fraudulent.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

This was an action for damages for fraud in obtaining a deed begun by J. P. Coan against Henry C. Jones. The facts are stated in the opinion of the court. From a judgment for plaintiff, the defendant appeals.

HORACE STRINGFELLOW, for appellant.—No brief came to the reporter.

O. S. LEWIS and RAY RUSHTON, for appellee.—No brief came to the reporter.

HARALSON, J.—On the 26th of April, 1897, as appears from the record, the plaintiff and his wife, sold and conveyed to the defendant, H. C. Jones (to employ the language of their conveyance) : "That portion of the western part of our land that will be flooded by back water caused by the erection of a dam thirty-one (31) feet in height to be built across the Tallapoosa river on land bought by Henry C. Jones of William Cole on the west side of said river in Elmore county and Mrs. Britt on the east side of said river in Tallapoosa county all in section 6 of township 18 north, range 22 east in the state of Alabama. The eastern boundary line of land that we hereby grant shall be determined by a level line as such dam shall cause water to assume at low water and such boundary shall meander according to level of water as such dam shall influence. It is understood and agreed that the foregoing applies to low water and any

extra differences in fluctuation of said water or change of level by rains is considered as not damaging and we assume such extra water level as may be caused by any abnormal flow of water in combination with any influence from said dam."

On the 28th of February, 1899, for good and sufficient considerations, the plaintiff and wife executed another deed to said Henry C. Jones, conveying to him property described as follows: "That already deeded (by said deed of the 26th of April, 1897), and such other and further portion of the lands of said James P. Coan, that will be covered or flooded by back water caused by diverting or raising the water of the Tallapoosa river and Sangahatchie, and their tributaries, from their present or natural channels by building a dam of sufficient height to furnish, at any stage of water, an actual or net working head of fifty (50) feet between the surface head water and the surface tail water. The said dam to be built across the Tallapoosa river, in the development of a water power at such location as engineers may determine, but such dam and development is to be at same on and between land bought by H. C. Jones of W. H. Cole, on the west side of said river in Elmore county," etc.

On that date, February 28, 1899, as appears, the defendant, Jones, executed an agreement with the plaintiff as follows: "This agreement is to evidence the fact that in consideration of the deeding to me this day certain water or flood rights, I am to have engineers to survey and determine by actual measurement the number of acres of land that will be flooded as set forth in said deed, over and above that already deeded (April 26, 1897), and I agree to pay to said James P. Coan for such excess land at the rate of twenty dollars per acre on or before October 1st, 1899. Upon the payment for this land under these conditions this instrument becomes the property of the holders of such deed, but upon the failure to pay for such lands, as is provided herein, the said deed and this agreement become null and void and the land to which it applies remians the property of James

P. Coan, excepting that already deeded applying to a thirty one foot dam."

The complaint is, that the defendant, Jones, having this deed from the plaintiff for certain water or flood rights, for a 31-foot dam entered into a contract with plaintiff for all additional land that would be flooded by building a dam of sufficient height to furnish at any stage of water an actual working head of 50 feet between the surface head water, and the surface tail water, or the difference between a 31 and a 50 foot dam. The contract, as has been seen, provided that the defendant was to have engineers survey and determine by actual measurement the number of acres of land that would be flooded in addition to that already deeded (April 26, 1897), and he was to pay the plaintiff for such excess land at the rate of $20.00 per acre, on or before October 1, 1899. It further appears from the complaint, that one "Brewer as agent of the defendant represented and reported to plaintiff that the land that could be overflowed, was two and a half (2 1-2) acres additional to that already purchased; that plaintiff relying on the statement of the said agent of defendant, did execute to defendant a deed conveying to him the land already deeded, and all additional land that would be flooded by back water of the Tallapoosa river and Sangahatchie creek and their tributaries, from their actual channels by building a dam of sufficient height to furnish, at any stage of water, an actual working head of fifty feet between the surface head water and surface tail water, for which defendant paid plaintiff the sum of $50.00 (2 1-2 acres, at $20.00 per acre). And plaintiff avers, that the said statement of the agent of said defendant as to the amount of the land that would be overflowed, to-wit, 2 1-2 acres, was false and fraudulent, for plaintiff avers, that the land really covered by such water, is about 40 acres; and plaintiff alleges that by reason of said representations and his relying on same, he executed a deed conveying the flood right above set out, to defendant, to his damage (of) one thousand dollars, for which, with interest from the 28th day of February, 1899, he now sues."

There are two counts in the complaint, each of which sets up the agreement, and contains the same averments, except that the first avers that the contract was with defendant, and the other that it was with his agent.

The defendant pleaded the general issue and that the fraud complained of occurred, if at all, more than one year before the commencement of this suit, and that the cause of action is barred by the statute of limitations of one year.

The plaintiff replied, that he did not discover the fraud until less than one year before the commencement of this action.—Code 1896, § 2813. Issue was joined on the replication and the cause was tried thereon.

The defendant requested the court to charge, that if the jury believed the evidence they must find a verdict for defendant. He also made a motion for a new trial. The refusal of the court to give said charge, and to grant the motion for a new trial, are the only errors assigned which are insisted on by counsel for appellant.

The plaintiff testified: "I learned for the first time, that the dam built covered more than 2 1-2 acres, in addition to the first deed, when the water backed up there, in October, 1902. I never knew how much land was covered until the dam was built and the water backed up. * * * The water was not turned on to my knowledge, prior to October, 1902. There was a freshet before that, which threw the water out there, and the dam burst and the river went back into its banks. That was the time of the first big freshet, when the dam was first completed. The water did not back up any more until October, 1902." He further testified, that Brewer, who was defendant's agent in the matter, told him the day he received the deed, that there were only 2 1-2 acres of land flooded. He says, "Brewer gave me the check (for the 2 1-2 acres) the day I signed the deed, and at the time I executed the deed, he told me they had run the line, and that there were only 2 1-2 acres of my land, covered by the deed. J. P. Coan testified that he heard Brewer say at the house of plaintiff, at the time the deed was executed, that the overflow would cover only two and a half acres.

[Jones v. Coan.]

It appears that a check was given by defendant to plaintiff for $50, which would be the exact amount for two and a half acres at $20. Plaintiff testified the check was given the day the agreement was signed, though not paid, for some time afterwards, as the evidence tends to show. Weldon, a witness for defendant, testified, that this check was made some time in April, 1899. This evidence tends to show, that it was to pay for 2 1-2 acres. That was all of his land that was represented to plaintiff that the flood waters would cover.

M. Mason, a civil engineer of long experience, testified, that he had made a careful survey of the difference in the amount of land of the plaintiff between what would be flooded by a 31 and a 50 foot dam, and that the amount was 14 acres. He says, "In making the survey, he followed the deed from plaintiff to defendant, of February, 1899, and surveyed the land of plaintiff conveyed by that· deed. The amount of the lands of plaintiff which would be covered by a 50-foot dam, in addition to what would be covered by a 31-foot dam was 14 acres."

J. M. Garrett, a witness introduced by defendant, testified, that being a civil engineer of long experience, he made a careful survey of the difference in the amount of land of the plaintiff that would be flooded by a 31 and a 50 foot dam, following the deed from plaintiff to defendant of February, 1899, and calculated that it was 11 1-2 acres.

There was no evidence in conflict with the testimony of plaintiff, that he did not ascertain the alleged fraud that was practiced on him, until less than a year before the commencement of this suit, on the 18th of July, 1903, except, if that were important, that plaintiff had the opportunity to know and ought to have known better, long before. If that was sufficient to place the evidence for the two in conflict, and to raise an inference adverse to plaintiff, yet it did not authorize the giving of the general affirmative charge for the defendant. Moreover, the evidence as to the quantity of the plaintiff's land which was subject to be flooded by the 50-foot wall, and to which he was entitled to pay under his agreement with defendant,

[Rutherford v. Dyer.]

was, according to the evidence, far in excess of 2 1-2 acres, so far, as to raise the fair inference, that a representation of the defendant's agent, if made, that it was only that amount, was false and fraudulent.

On an examination of the evidence and charges given, other than as to the statute of limitations, we have not seen, nor had pointed out to us, wherein the verdict was wrong and unjust.—*Teague v. Bass,* 131 Ala. 422, 31 South. 4.

Affirmed.

WEAKLEY, C. J., and DOWDELL and DENSON, JJ., concur.