# Tillis *v.* Smith Sons Lumber Co.

*Assumpsit.*

(Decided April 16, 1914. Rehearing denied June 24, 1914. 65 South. 1015.)

1. *Fraud; Representations; Duty to Investigate.*—A party to whom representations are made may rely upon them without instituting an independent investigation, where the statements are made as of facts, especially of matters which may be within the knowledge of the party making them.

2. *Same; Opinion.*—Where the parties deal at arm's length, the expressions of opinions by a seller as to the property, such as to cur-rent market values, etc., cannot be made the ground for an action of deceit, since the vendee had no right to rely thereon.

[Tillis v. Smith Sons Lumber Company.]

3. *Same; Jury Question.*—Under the evidence in this case it was a question for the jury whether the representations of the vendor as to the value of the goods were mere expressions of opinion or statements of fact on which the vendee was entitled to rely.

4. *Same; Trader's Talk.*—A seller is not liable either in contract or tort fore mere "trader's talk."

5. *Same; Representations; Opinion.*—Although the value of property is often a matter of opinion, yet if the purchaser states his ignorance and invites the opinion of the seller, and gives him to understand that he relies on that opinion, the vendor is not bound to answer, but if he does answer, he must speak the truth, since under such circumstances the affirmation of a definite opinion as to value becomes an affirmation of a fact—of the fact of a bona fide opinion.

6. *Same; Jury Question.*—Whether an opinion of a vendor concerning the value of property has been elicited under such circumstances of confidence as to induce the purchaser to forbear independent investigation, is usually a question for the jury.

7. *Same.*—If, after an independent investigation which proves unavailing or unsatisfactory, a purchaser goes to the vendor, demanding assurance, the question as to whether he relied on an assurance so obtained is for the jury.

8. *Same; Damages.*—In an action for deceit and assumpsit by a purchaser against a seller, the proper measure of damages is the difference between the actual value of the property at the time of sale or exchange, and it represented value.

9. *Appeal and Error; Harmless Error; Pleading.*—Where the general issue was pleaded in due form, any error in sustaining demurrer to a plea which was no more than the general issue, was harmless.

10. *Charge of Court; Conformity to Evidence.*—Charges seeking to limit the inquiry as to fraudulent representations to one certain occasion during the negotiations which led up to the sale were properly refused where there was evidence of similar representations made on the occasion when the sale was consummated.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by the Smith Sons Lumber Company, a corporation, against Richard Tillis. Judgment for plaintiff, and defendant appeals. Affirmed.

The following are the counts referred to:

(5) "Plaintiff claims of defendant the sum of $100,000 as damages, for that, to wit, on the 29th day of July, 1908, one W. T. McGowin, one E. L. McGowin, and I. E. Boyette had been negotiating with plaintiff for the purchase of certain of its assets consisting of a large

amount of real and personal property at and for the sum of $200,000; that pending said negotiation it became necessary for the vendees to procure some one to fiinance the deal for them, and on, to wit, the last day aforesaid, the vendees offered to purchase the said assets at and for the sum of $151,000, and also for certain bonds of the Norfolk & Southern Railway Company, called Norfolk & Southern Railway Company, first, and refunding 5 per cent. sinking fund gold bond of the face value of $44,000, and also for 150 shares of what was called preferred stock of said railroad company of the par or face value of $15,000, and also for 250 shares of what was called the common stock of said railroad company, a portion of which said $151,000 and all of which said bonds and stock the defendant had agreed to furnish at the face value of said bonds and preferred stock as a loan to the vendee, knowing the aforesaid purpose for which they were to be used, and to take as security therefor from them a first mortgage on the chief assets so to be sold by plaintiff to vendee, and plaintiff avers that it knew nothing as to the value of said bonds and stock, and, before accepting said offer, its representative on its behalf informed defendant in substance that it knew nothing of the value of said stocks and bonds, and inquired of defendant as to the true value thereof; that said defendant then and there stated to the representative of plaintiff in substance that said bonds and said preferred stock were as good as gold, and worth dollar for dollar, and that said bonds were secured by a first mortgage on the property of said railroad company; that said common stock was of practically no value; that shortly thereafter plaintiff agreed to and did accept the said offer of said vendee, relying upon the representation of defendant as aforesaid, and conveyed to the said vendees the assets purposed to be purchased

by them as aforesaid, and said stocks and bonds were thereupon delivered by defendant to plaintiff as in part payment of said consideration. Plaintiff avers that said bonds and stock at the time of said transaction were not good, and not worth dollar for dollar, but on the contrary were of little or no value, that said bonds were not secured by first mortgage, and that the said railroad company was then in the hands of a receiver. And plaintiff avers that said representation of defendant as to the value of said bonds and preferred stock, and as to the security for said bond, were falsely and fraudulently made by defendant for the purpose and with the intent to deceive and mislead plaintiff, which representations did in fact deceive and mislead plaintiff, to his damage as aforesaid."

(7) Same as 5 as to the transaction, except that it is alleged, in addition to the above consideration, that "the vendees named were to execute two promissory notes, one for $16,000, payable one year after date, and one for $25,000, payable two years after date, which latter sums were to be secured by mortgages on all or substantially all of the assets purchased, said mortgage to be subject to a first mortgage given to Tillis; that the proposition was made upon the condition that Tillis would furnish the stocks and bonds and a part of the cash; and that said Tillis did agree to furnish said stocks and bonds at the face or par value thereof and a part of the said cash sum, provided the vendees would execute him a first mortgage on all of the real and personal property which they proposed to purchase from plaintiff, the mortgage to be in the sum of $150,000, which included the face or par value of said bonds and preferred stock, and provided, further, that plaintiff would pay Tillis the earned or accumulated interest, amounting to $550. The negotiations were being conducted and carried on in the

state of Alabama, and the said Norfolk & Southern Railway was a corporation operating a railroad in the state of Virginia, with its principal place of business in the city of Norfolk, and plaintiff was ignorant of the real and true value of said stocks and bonds, and before accepting the proposition, its representative informed the said Tillis that it was ignorant of the value of said stocks and bonds, and inquired of him as to the real value thereof, and that said defendant Tillis represented and stated to that representative of plaintiff in substance that said bonds and preferred stock were as good as gold, and were worth dollar for dollar; that said bonds were secured by a first mortgage on all of the property of said railroad company, but that the common stock was of no value. Plaintiff avers that, relying upon said representation, it thereupon accepted the said proposition of the vendees, and received from said Tillis the stocks and bonds, and paid him the earned or accumulated interest of $550, and conveyed to the said vendees, its sawmill plant and other real and personal property as aforesaid; that the said vendees thereupon executed to the said Tillis a first mortgage on said property for the sum of $150,000, which included the face or par value of said bonds and preferred stock, and a second mortgage to plaintiff as agreed. And plaintiff avers that the representations of said Tillis as to the value of said bonds and said preferred stock were untrue, and were known by him to be untrue, and that the railroad company was then in the hands of a receiver in a proceeding wherein the mortgage given to secure the said bonds was sought to be foreclosed, which fact was then known to defendant; that the said preferred stock was practically worthless; that said bonds had no market value, and were worth in truth and in fact only about 50 cents on the dollar; that the said mortgage was not a

first mortgage on the property of said railroad company as represented by the said Tillis as aforesaid; and that the said representations of said Tillis were falsely and fraudulently made for the purpose of deceiving plaintiff and inducing it to accept said stocks and bonds as a part of the purchase price as aforesaid, and which did deceive plaintiff and induce the acceptance of said stocks and bonds, and the sale and conveyance by it of the property aforesaid."

The allegation of deceit is the same in the eighth as in the seventh count. The ninth is the same as the seventh and eighth, with the same allegation as in the seventh count as to the deceit.

Defendant moved to strike from the fifth count the following: "That said bonds and said preferred stock were as good as gold, and worth dollar for dollar"—and also: "The value of said bonds and said preferred stock."

Also moved to strike from the sixth count the following: "And plaintiff avers that the representation of the said Tillis as to the value of the said bonds and the said preferred stock were untrue, and known by him to be untrue."

Also moved to strike from the seventh count the following: "That the said bonds and preferred stock were as good as gold, and worth dollar for dollar."

The same motion was made as to the eighth and ninth counts.

The pleas were as follows: (4) The alleged false representation of this defendant was as to a fact not peculiarly within the knowledge of this defendant, but was one as to which plaintiff had equal and available means and opportunity for information as this defendant had.

(5) That the alleged false representation of this defendant [same as 4 down to and including the last word therein]; and defendant further avers that plaintiff fail-

ed to exercise reasonable care and prudence to ascertain the alleged falsity of said representation; and defendant further avers that plaintiff negligently and carelessly failed to make use of its said means and knowledge, and, if it had done so, it would have discovered and found out the true and real value of said bonds and stock in said complaint mentioned.

Plea 3 substantially appears from the opinion.

The following charges were refused to defendant: (9) If any individual juror, after a fair consideration of all the evidence, is reasonably satisfied by any material part of the evidence that defendant did not state to the witness Keyser, at the office of Hill, Hill & Whiting, that the bonds and preferred stock were as good as gold, and worth dollar for dollar, and in substance that the mortgage securing the bonds was a first mortgage on the property, you cannot find for plaintiff for any damages as the result of any fraud or deceit or misrepresentation on the part of defendant.

(12) Plaintiff cannot recover in this case, unless the jury is reasonably satisfied from the evidence that defendant, in the office of Hill, Hill & Whiting, falsely represented to the witness Keyser the value of the bonds and preferred stock, and that the bonds were secured by a first mortgage, and that this false representation induced plaintiff to part with its property.

(10) If you should find from the evidence in this case that plaintiff, through its agent or agents, made an independent investigation as to the value of bonds and stocks and the condition of the property of the Norfolk & Southern Railway Company as to liens, and acted on such independent investigation, I charge you that you cannot find for plaintiff for any damages whatsoever as a result of fraud or deceit, even though you should be reasonably satisfied from the evidence that defendant

falsely and fraudulently made the representations complained of with intent to deceive.

RUSHTON, WILLIAMS & CRENSHAW, and HILL, HILL, WHITING & STERN, for appellant. The court erred in overruling defendant's several motions to strike from the several counts the alleged representations as to the stocks and bonds.—113 Ala. 467; *Camp v. Camp,* 2 Ala. 636; *Lake v. Sec. L. Co.,* 72 Ala. 207; 2 L. R. A. 743; 137 Fed. 744; 85 Mass. 380; 40 Am. Dec. 314; 11 Am. St. Rep. 345; 39 L. R. A. 644; 43 Am. Rep. 166; 93 Ind. 591; 72 Ill. 390. The court erred in overruling defendant's demurrers to counts 5, 7, 8 and 9 as last amended.— *Graybill v. Drennen,* 150 Ala. 222; *New Orleans v. Musgrove,* 70 Ala. 428; *Coleman v. Bank,* 115 Ala. 307; *Moore v. Pritchett,* 16 Ala. 785. The court erred in sustaining demurrers to defendant's pleas 3, 4 and 5.—Authorities supra. On these authorities, the court also erred in refusing the charges requested by defendant. The court erred in declining to permit defendant's witnesses to testify as to the value of the property which was transferred.—179 U. S. 116; 132 U. S. 125; 20 C. C. A. 244; 50 N. W. 612; 126 Cal. 628; *Peak v. Derry,* L. R. 37 Ch. Div. 541; s. c. 14 App. cases 337.

T. M. STEVENS and STEINER, CRUM & WEIL, for appellee. As to the right of plaintiff to rely on the representations, and as to his right to maintain this action for deceit, see §§ 2468-9, and 4298, Code 1907; *Lester v. Mayhan,* 25 Ala. 445; *Hafer v. Cole,* 57 South. 757; *Gewin v. Shields,* 52 South. 887; *Tuscaloosa County v. Foster,* 132 Ala. 392; *Prestwood v. Carlton,* 162 Ala. 327; *So. States Co. v. Wilmer Stores Co.,* 60 South. 98; *Brown v. Freeman,* 79 Ala. 406; *Monroe v. Pritchett,* 16 Ala. 785; 82 N. W. 498. When a person puts a state-

ment into the form of an opinion when he has positive knowledge that his statement is untrue, it is actionable. —60 Am. St. Rep. 390; 132 Am. St. Rep. 487; 75 Maine 55; 64 Am. Dec. 685; 15 L. R. A. 795; 105 U. S. 555; *Brown v. Freeman, supra.* A party asserting a fact cannot complain that the other took him at his word.— *Burroughs v. Pac. G. Co.,* 81 Ala. 255; *Crocker v. White,* 162 Ala. 476; *Shanan v. Brown,* 52 South. 737. In any event, under the facts in this case, these questions were all properly submitted to the jury.—*Foster v. Kennedy,* 38 Ala. 359; *Tabors v. Peters,* 74 Ala. 90; *Moses v. Katzenburger,* 85 Ala. 95; 82 N. W. 498.

SAYRE, J.—Smith Sons Lumber Company, a corporation, sued Tillis in an action of deceit. The cause being submitted to a jury on counts 5, 7, 8, and 9, plaintiff recovered judgment. The facts averred in the complaint show a tripartite negotiation for the sale of a sawmill property. Two McGowins and one Boyette, acting together, and to be hereafter for brevity referred to as the McGowins, proposed to purchase the mill property from plaintiff, and to pay the price in money and in large part by the delivery of certain bonds and preferred stocks of the Norfolk & Southern Railway Company, a Virginia corporation, which money, bonds, and stocks they were to get from defendant. To enable the McGowins to effect the purchase, defendant was to advance the money, bonds, and stocks, taking from them a mortgage to secure repayment of the money, and as well the price at which plaintiff was to take the stocks and bonds. The negotiation resulted in a sale on the considerations stated, and, in view of the further facts to appear, the transaction involved the same legal consequences, and may be properly and most conveniently treated for all the purposes of this case, as though Til-

lis had sold the bonds and stocks to the Smith Com-
pany. The further facts alleged and to be considered
are, in brief, that plaintiff, stating its ignorance to de-
fendant, inquired of him as to the true value of the
bonds and stocks, whereupon defendant, with intent to
deceive plaintiff and induce it to accept them at a price
greatly in excess of their true value, falsely and fraud-
ulently represented to plaintiff that (counts 5 and 7)
"the said bonds and preferred stock were as good as
gold," or that (counts 8 and 9) "said bonds and prefer-
red stock were perfectly good," and in addition that
(all the counts) "said bonds were secured by a first
mortgage on all the property of the said railroad com-
pany." Count 5 differs from counts 7, 8, and 9 in this,
not to mention other variations of no particular import-
ance: It avers that defendant falsely and fraudulently
represented, etc.; whereas, in the other counts, the ad-
ditional averment is that he knew his representations
were false.

By motions to strike certain phrases from the sev-
eral counts, by demurrer, and by special instructions re-
quested, defendant brought forward his contention that
the complaint in its averment of the representation
counted upon stated only a case of "trader's talk," or
at most a mere opinion, upon which plaintiff had no
right to rely.

The alleged false representations as a whole consti
tuted the gist of the cause of action asserted in the sev-
eral counts, and the question was upon the legal suffi-
ciency of its statement. Those segregated parts against
which the motions were directed were not frivolous,
scandalous, or unduly prolix, nor were they impertinent,
irrelevent, or immaterial to the cause of action as con-
ceived and alleged by the plaintiff. They were proper,
if not essential, elements of the case stated, and the

court correctly refused to mutilate that statement of the case. The proper method of getting defendant's contention in respect to the sufficiency of the counts before the court was by demurrer.—4 Mayf. Dig. p. 496, § 1196 et seq.

The question raised by the demurrer is whether the court can say that the representations alleged, though falsely and fraudulently made, fail to state an actionable wrong. Where statements are made as of fact, especially where they concern matters which may be assumed to be within the knowledge of the party making them and where there is nothing to arouse suspicion, the party to whom they are made has a right to rely upon them without instituting an independent investigation, and, if they be false, it is immaterial that they may have been made without fraudulent intent. They are fraudulent by construction of law.—*Shahan v. Brown,* 167 Ala. 534, 52 South. 737; *Einstein v. Marshall,* 58 Ala. 153, 29 Am. Rep. 729. The difference between the counts, stated above, imports no lack of necessary averment in count 5. The greater generality of that count simply opens to the plaintiff a wider field of inquiry, for, besides covering the case alleged in the other counts, it reaches and adequately states a case, involving identical legal consequences, as for the false statement of material fact made to entrap plaintiff, ignorantly it may be, but with reckless disregard of its truth or falsity.—*Brown v. Freeman,* 79 Ala. 406.

We think it cannot be determined as a conclusion of law on the language used whether the alleged statement of the defendant was the representation of a fact, which he intended should be understood as true of his own knowledge, or the expression of an opinion. That depends upon the surroundings, which in this case, we think, were a proper subject for interpretation by the

[Tillis v. Smith Sons Lumber Company.]

jury.—*Moses v. Katzenberger,* 84 Ala. 95, 4 South. 237; *Tabor v. Peters,* 74 Ala. 90, 49 Am. Rep. 804; *Andrews v. Jackson,* 168 Mass. 266, 47 N. E. 412, 37 L. R. A. 402. 60 Am. St. Rep. 390.

For mere "trader's talk" the vendee will not be held to respond either in contract or tort. In *Deming v. Darling,* 148 Mass. 504, 20 N. E. 107, 2 L. R. A. 743, cited by appellant, it is said to be settled: "That the law does not exact good faith from a seller in those vague commendations of his wares which manifestly are open to difference of opinion, which do not imply untrue assertions concerning matters of direct observation, * * * and as to which 'it always has been understood, the world over, that such statements are to be distrusted.' "

And the court added: "The rule of law is hardly to be regretted, when it is considered how easily and insensibly words of hope or expectation are converted by an interested memory into statements of quality and value, when the expectation has been disappointed."

But the modern tendency is to restrict this license of vendors.

Cases do arise in which the court will say, as matter of law, that the representation made is mere "trader's talk," and an opinion, though implying some knowledge of facts, may be stated under such cimcumstances that the court will say that the vendee should not have relied upon it. Appellant has cited some such cases. Expressions of opinion as to the future undeveloped uses or value of property, amounting to mere speculation, belong to this class.—*Ansley v. Bank of Piedmont,* 113 Ala. 467, 21 South. 59, 59 Am. St. Rep. 122. And where the parties deal at arm's length, and the vendee is not fraudulently induced to forbear inquires which it may be presumed every competent person would otherwise make for his own protection, expressions of opinion as

to matters which lie in opinion merely—opinions as to current market values furnishing the most common example—will not constitute ground for an action of deceit, for the reason that the vendee, knowing the nature of such expressions, has no right to rely upon them. He should inquire and examine for himself.—*Camp v. Camp*, 2 Ala. 632, 36 Am. Dec. 423.

"A man who relied on such affirmations, made by a person whose interest might so readily prompt him to invest his property with exaggerated value, does so at his peril, and must take the consequences of his imprudence."—Kerr on Fraud and Mistake, 84.

But while the value of property is generally a matter of opinion, yet if the purchaser states his ignorance and invites the opinion of the vendor, as alleged in the complaint under consideration, thus in effect giving the vendor to understand that he relies upon that opinion, and putting upon him the onus of confidence imposed and the responsibility of making a definite statement, the vendor is not bound to assume the burden or to answer; but if he does, and his answer exceeds the license of those vague commendations which do not imply untrue assertions concerning matters of direct observation, his answer must speak the truth. Under such circumstances the affirmation of a definite opinion as to value becomes an affirmation of fact, that is, of the fact of a bona fide opinion; and if it is falsely and fraudulently made "to mislead or cheat another, to abuse his confidence, or to blind his judgment, it is in law and morals as reprehensible as if any other fact were affirmed for the like purpose."—*Stebbins v. Eddy*, 4 Mason, 423, Fed. Cas. No. 13,342; Kerr on Fraud and Mistake, 87 *Montgomery So. Ry. v. Matthews*, 77 Ala. 357, 54 Am. Rep. 60; *Wilcox v. Henderson*, 64 Ala. 535; *Camp v. Camp, supra; Simar v. Canaday*, 53 N. Y. 298, 13 Am. Rep.

523.   The demurrers to the counts mentioned above were properly overruled.

Whether a representation in the form of an opinion implying some knowledge of facts shall be held for an opinion merely, or was intended for acceptance as a statement of fact, is in general a question to be determined by the jury on consideration of all the surroundings.—*Moses v. Katzenberger, supra; Tabor v. Peters, supra.* So, likewise, whether an opinion has been elicited under such circumstances of confidence as to induce the vendee to forbear independent inquiry is a question for the jury.

Clearly plea 3 stated a good defense, for it contained, among other things, a categorical denial that defendant made to plaintiff any representation of any kind concerning the value of the bonds and stocks. That denial was equivalent to the general issue, which was also pleaded in due form. The error of sustaining the demurrer was harmless.

Pleas 4 and 5 were bad for reasons which may be found in the principles of law stated above in connection with the rulings on the sufficiency of the several counts upon which the case was tried.

Charges 9 and 12, requested by the defendant, sought to limit the inquiry as to fraudulent representations to one certain occasion during the negotiation which led up to the sale. But there was evidence of similar representations made on the occasion when the sale was consummated. Appellant contends that these last alleged representations were made, if at all, after the sale, and his testimony went to support this contention; but the evidence for appellee tended to show that, though the terms of the sale had been agreed upon, yet the agreement was tentative only, that there had been no delivery and acceptance of the bonds and stocks, without which

there was nothing to suggest that the parties intended the title to pass, that, in short, until the actual delivery the contract of sale rested in negotiation, so that either party was yet at liberty to withdraw entirely or to seek new inducements, and that, while the negotiations were at this stage, plaintiff's agent, acting in the premises for plaintiff, again demanded of defendant further assurance as to the value of the bonds and stock. Defendant's final response, made under those circumstances, in line with the representations charged in the complaint, and similar to those which the testimony tended to show had been made on previous occasions, was relevant and proper for consideration by the jury. These charges were properly refused.

The proposition of charge 10 failed to take account of one certain aspect of the evidence, and was too broadly stated in favor of the defendant. In Pomeroy's Equity Jurisprudence, § 892, the law is stated to be that: If, after a representation of fact, however positive, the party to whom it was made institutes an inquiry for himself, has recourse to the proper means of obtaining information, and actually learns the real facts, he cannot claim to have relied upon the misrepresentation, and to have been misled by it. Such claim would simply be untrue."

But it would seem to be clear that if the vendee, after inquiry which proves unavailing or unsatisfactory, goes to the vendor demanding assurance, the question whether he relied on an assurance so obtained must be one for the jury. It appeared that at an early stage of the negotiation plaintiff communicated with its bankers in Mobile, asking them to make inquiry in New York as to the value of the bonds and stocks of the Norfolk & Southern Railway. But it seems that in the memorandum, which plaintiff's agent made at defendant's dicta-

[Tillis v. Smith Sons Lumber Company.]

tion for the purpose of investigation, a mistake occur-
red in describing the bonds of the railway company, of
which there were several issues—though how this mis-
take occurred, and whether it made any real difference
in the value of the bonds, was left in doubt—and that
the answer, relating to bonds only, and omitting any ref-
erence to stock, indicated a more or less doubtful value,
approximating, however, the price demanded and re-
ceived by defendant. Subsequently plaintiff, according
to the tendencies of its evidence, required defendant to
make statements as to the value of the stocks and bonds.
Defendant denied the alleged representations in toto.
Whether plaintiff was justified in relying upon state-
ments elicited under these circumstances as representa-
tions of fact or of bona fide opinion, if any were made,
and whether plaintiff did in fact rely in material part
upon them, or wholly upon information gained from
other sources, were questions for the jury. But the
charge in question, construed in connection with the
evidence, might have misled the jury to conclude the
case against plaintiff on the bare fact that it had made
the inquiry of its bankers above mentioned. It was well
refused.

There is a degree of obscurity in charge 13 requested
by defendant arising out of the use of the phrase "as to
the value of its property." If, however, the charge be
read as asserting the proposition that the defendant was
entitled to a verdict if the plaintiff did not rely at all
upon defendant's representation as to the value of his
bonds and stock, and so appellants reads it, it was suf-
ficiently covered by other charges given for defendant.
and there was no error in refusing it.

Thus far, in discussing the principles of law deemed
to underly plaintiff's asserted cause of action, we have,
for mere convenience of statement, treated the transac-

tion at issue as though it were a sale of bonds and stocks by defendant to plaintiff at an agreed price. For the purpose of the statements already made, this method was not improper or misleading.—*Einstein v. Marshall, supra.* Coming now to the question of the measure of damages and some rulings on the evidence which have been assigned for error, it is necessary in the consideration of the position taken by appellant to have regard for the transaction more precisely as it was. In this connection it is noted that plaintiff and defendant entered into no contractual relations. They each contracted with the McGowins. but not with each other. Defendant, therefore, could be held to respond in damages to plaintiff in an action of tort only, and this on the theory that by the fraud he had induced plaintiff to enter into the trade with the McGowins. In large part the transaction as between the plaintiff and the McGowins was a barter or exchange of properties, and amounted in effect to this, that plaintiff gave its sawmill property in exchange for the McGowins' bonds and stocks, plus a sum of money paid and to be paid. The bonds were taken in the trade at 95, the stock at 80, per centum of their face value. Defendant offered to prove the value of the mill property, and we may assume that his witnesses would have testified that it was worth less than the agreed estimate of its value, viz.: $200,000. He excepted to the court's adverse rulings. The court, instructing the jury along the same line, laid down the measure of damages as the difference between the represented value of the stocks and bonds and their actual value at the time of the sale, with interest. These rulings are assigned for error.

Appellant's insistence in respect to the proper measure of damages, in an action of deceit by vendee against vendor, is that to make the vendee whole it is only nec-

essary, and therefore just, that the vendee have the difference between that which he had before and that which he had after the purchase; that is, he should have the difference between the value of the thing purchased and the price paid, or, in case of an exchange, the difference between the value of what he was fraudulently induced to part with and the value of what he got. This may be the rule of the federal courts, of some of the state courts, and seems to be the rule in England.—Sutherland on Damages, § 1172; 20 Cyc. 135. But the rule sustained by the great weight of authority in this country is that the vendor must make good his representation as though he had given a warranty to that effect, that damages must be measured by the difference between the actual value of the property at the time of the sale or exchange and is represented value.—Sutherland, 1171; 20 Cyc. 132. We think our own cases lend support to this statement of the proper rule.—*Foster v. Kennedy*, 38 Ala. 359, 81 Am. Dec. 56; *Thompson v. Bell*, 37 Ala. 438; *Kelly v. Allen*, 34 Ala. 663; *Gibson v. Marquis*, 29 Ala. 668; *Stow v. Bozeman*, 29 Ala. 397. This rule, evidently, derived from the law of contract, gives the purchaser "the benefit of his bargain," and is based upon the consideration that in good morals he is entitled to that benefit. Appellant, adverting to the fact that he was not a party to any contract with appellee, urges that as a special reason why the rule of the federal courts should be adopted in this case. But if we are to observe the rule which has become firmly established in the great majority of the courts in this country—and it seems to us to be a very just rule—we can find no sufficient reason for taking this case without its operation. As pointed out in *Potter v. Necedah Lumber Co.*, 105 Wis. 25, 80 N. W. 88, 81 N. W. 118: "The foundation principle upon which all rules for determining damages

in a case of actionable fraud rests is that the wronged party is to be compensated for the loss he sustained by the fraud to the extent of the natural and proximate consequences of the wrong."

And the difference in the two rules above stated arises out of different conceptions of proximate consequence. The most general conception is that the vendee is entitled to "the benefit of his bargain," and a loss of that benefit is a consequence of the fraud. This transaction was in part a barter of properties; but the rule in such cases is the same as where there is a sale. Defendant was not a party to the contract; but he was in a most material way a party to the negotiation from which it resulted. Even if he had been without interest in the outcome, he would have been responsible for the consequences of a representation known to be false and made to induce the sale. This doctrine is stated in strong language by STONE, J., in *Einstein v. Marshall, supra.* But the facts of this case, assuming that the jury correctly interpreted the evidence in accordance with this appellee's contention, take it far beyond the requirements of that doctrine. It is entirely plain that there would have been no contract but for defendant's intervention, and it may be assumed that his course was in part at least controlled by anticipation of advantage to himself. He was making a large investment of cash capital besides the value of his bonds and stocks. He investigated the value of the mill property on his own account. The McGowins were dependent upon him. He was thus in a position to dictate, and did in fact dictate, substantially the entire contract; that is, in the situation of the parties, this particular contract could not have been made without his approval. It seems clear that on the general doctrine of the cases, to which the facts in evidence lend moral weight, plaintiff was en-

[Ex Parte Hudgins.]

titled to the benefit of the bargain which defendant, according to one tendency of the testimony, has fraudulently helped to impose upon it, and that the trial court, in its rulings on the evidence, and in its instruction to the jury on the measure of damages, committed no error. Our conclusion is that the case was properly submitted to the jury for decision, and that the judgment be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

