(117 So. 477)

CARTWRIGHT v. BRALY. (8 Div. 988.)

Supreme Court of Alabama. June 21, 1928.

Fred Wall and J. G. Rankin, both of Athens, for appellant.

G. O. Chenault and Almon & Almon, all of Decatur, for appellee.

BOULDIN, J. In March, 1923, the First National Bank of Athens, Ala., having its capital impaired, was reorganized under orders of the Federal Bank Examiner. A creditor bank took over $25,000 doubtful paper at par, the existing capital stock was wiped out by formal foreclosure, and new cash capital of $50,000 subscribed.

In May, 1926, the reorganized bank failed and went out of business. The plaintiff, N. C. Braly, took $1,000 of the new stock, which was lost to him, and he was required to pay the further sum of $1,000 by virtue of his statutory liability under the federal banking laws. Thereafter he brought this suit against R. N. Cartwright, Sr., who was chairman of the board of directors at the time of reorganization, for alleged fraud and deceit, whereby he was induced to take stock and suffer loss. There was judgment for plaintiff, and defendant appeals.

The case went to the jury on counts 5 and 7 as amended, and on counts 6 and 8. Amended count 5 reads:

"The plaintiff claims of the defendant $2,000, with interest thereon, as damages in this: That on and before March 8, 1923, the defendant was an officer and stockholder of the First National Bank of Athens, Ala., which was a banking organization organized and existing under the national banking laws, and which then had its capital impaired and was in a failing condition, which was known to the defendant. The defendant, together with other officers and stockholders of said First National Bank of Athens, Ala., undertook to reorganize said bank and sell additional stock in said bank and get in new money. In furtherance of said scheme and purpose to get new money invested in said bank, the defendant solicited this plaintiff to buy stock in said bank, and in so doing defendant stated to the plaintiff that it was a good investment and that said bank was solvent and that its assets were good, clean assets, which representations were false and the falsity of said representations were unknown to the plaintiff. The plaintiff relied upon said representations of the defendant and subscribed for ten shares of the capital stock of said First National Bank of Athens, Ala., of the par value of $100 each and paid therefor $1,000, and thereby became a stockholder in said First National Bank as the owner of said shares of stock and having the attendant liabilities. The plaintiff thereby became individually responsible for all the contracts, debts, and engagements of said First National Bank of Athens, Ala., to the amount of the stock owned by him. Thereafter said bank was unable to pay its debts and meet and perform its contracts and engagements, and the plaintiff was legally called upon to pay and did pay in an additional $1,000 to said bank as it was his legal duty to do as such stockholder therein. Said First National Bank of Athens, Ala., failed and closed its doors and quit business, and said $2,000 was wholly lost to the plaintiff; hence this suit.

"The representations made by the defendant to the plaintiff concerning the solvency of said bank and its condition and its assets were material and willfully made by the defendant to induce this plaintiff to act thereon, and he did act thereon and was injured thereby in that he lost the money invested in said bank stock."

Count 7 follows count 5 except in the alleged misrepresentations relied upon to be hereafter considered.

These counts were challenged by demurrer upon the ground that it is not averred the defendant had knowledge, or the equivalent of knowledge, that the alleged representations were false, or that they were made with intent to deceive. The demurrer was overruled. This ruling is assigned as error. The knowledge imputed to defendant as to the failing condition of the bank relates to the condition of the old bank prior to reorganization. The representations alleged relate to the condition of the reorganized bank in which plaintiff was invited to invest. Was knowledge of falsity or intent to deceive essential to the right of action?

The law of fraud and deceit, as applied to the case in hand, has found expression in three sections of the Code, as follows:

"Section 5676 (2468). *Fraud and Damage Give Action.*—Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.

"Section 5677 (2469). *Deceit.*—Willful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood."

"Sections 8049 (4298). *Misrepresentations.*— Misrepresentations of a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud."

Appellant relies upon Hockensmith v. Winton, 11 Ala. App. 670, 66 So. 954, where-

52

in it is held that the last quoted section, so far as it refers to misrepresentations made "by mistake and innocently," must· be construed as defining such fraud as will authorize a rescission, but not an action on the case for damages suffered thereby. The same rule was suggested in McCoy v. Prince, 11 Ala. App. 388, 395, 66 So. 950. These cases are referred to by this court in McCoy v. Prince, 197 Ala. 665, 73 So. 386. That case involved rescission. These cases are out of harmony with the decisions of this court before and since these statutes appeared in the Code of 1907.

The early case of Munroe v. Pritchett, 16 Ala. 785, 50 Am. Dec. 203, was an action on ·the case for fraudulent misrepresentations; held knowledge of falsity of representations of material fact relied upon by the other party need not be shown.

In Jordan & Sons v. Pickett, 78 Ala. 331, an action for deceit by concealment, it was said:

"A contract, obtained by misrepresentation, may be avoided, or an action for damages sustained, though the asserting party may not know the statement is false. It is as much a fraud at law to affirm as true what is untrue, though not known to be so, as to assert what is known to be untrue. The law imposes the duty of ascertaining the truth of the statement before making it, and demands in case of omission that the representation should be made good. Munroe v. Pritchett, 16 Ala. 785."

In Harton v. Belcher, 195 Ala. 186, 70 So. 141, a cross-action for damages by plea of recoupment for misrepresenting boundary lines, it was said:

"In such circumstances it was of no consequence that, as for aught alleged in these pleas, the misrepresentation complained of may have been mistakenly made in good faith. Plaintiff's representation, if false as it was alleged to be, was fraudulent by construction of law, and for its injurious consequences he was answerable. King v. Livingston Mfg. Co., 180 Ala. 118, 60 So. 143; Shahan v. Brown, 167 Ala. 534, 52 So. 737; Tillis v. Smith Sons Lumber Co., 188 Ala. 122, 65 So. 1015.

" 'He who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, is, both in morality and law, guilty of falsehood, and must answer in damages.' Munroe v. Pritchett, 16 Ala. 785, 50 Am. Dec. 203."

The above statutes were considered in that case and held declaratory of existing law.

In Manning v. Carter, 201 Ala. 218, 77 So. 744, a cross-bill in equity to abate purchase money for misrepresentations, it was said:

"And it is immaterial that the misrepresentations were not made with dishonest motive. Honest belief in the truth of a statement of fact, made as an inducement to the consummation of a contract, does not relieve him making the statement of his legal liability therefor to one induced to act to his detriment thereby."

In Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286, an action for damages for fraud in sale of stock in a corporation, it was said:

"The representations are of facts, not mere opinions; their. materiality is manifest and need not be specially averred; that plaintiff was thereby· induced to purchase sufficiently shows reliance upon them; knowledge of their falsity and [or] representations made recklessly, without knowledge, is not essential to liability in such case. Code 1923, § 8049; Harton v. Belcher, 195 Ala. 186, 70 So. 141; Southern States F., etc., Co. v. Wilmer Stores Co., 180 Ala. 1, 60 So. 98; Manning v. Carter, 201 Ala. 218, 77 So. 744;· Stone v. Walker, 201 Ala. 130, 77 So. 554, L. R. A. 1918C, 839."

These cases correctly state the law. Code, § 5676, above quoted, clearly implies a right of action for damages suffered. Nothing in the statutes gives a hint of any purpose to apply one rule in actions for rescission, and another to an action on the case for damages. They have ever been treated as elective remedies. That they shall remain so is of importance, as will become apparent on reflection. The right of rescission is lost if rights of third parties have intervened. For ex-. ample, this case wherein the rights of depositors and other creditors of the new bank have attached: Green v. Stone, 205 Ala. 381, 87 So. 862.

In case of fraud in the purchase or exchange of property, the right of rescission by the vendor is lost if the defrauding party has passed it on to an innocent purchaser or mortgagee. If rescission be the sole remedy the defrauder may escape the consequences of one fraud by perpetrating another. Under section 8049 the misrepresentation must be of material fact, made to be relied upon as an inducement,· and must be relied upon to the injury of the other party. In such case an intent to deceive is not essential.

Under section 5677, knowledge or its equivalent with intent to deceive is required, but in such case the scope of liability is extended to cases of concealment. Griel v. Lomax, 89 Ala. 420, 6 So. 741; Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286. "Material fact" has a wider meaning under section 5677.

The statement of an opinion which is not his opinion, made to deceive and which does deceive, may, by reason of his peculiar knowledge of facts upon which a reliable opinion may be based and not accessible to the other party, amount to deceit. Montgomery So. Ry. Co. v. Matthews, 77 Ala. 357, 54 Am. Rep. 60; Tillis v. Smith Sons Lumber Co., 188 Ala. 122, 65 So. 1015. Fraud by suppression of the truth is further defined in Code, § 8050.

The representations alleged in count 5. viz., "that it was a good investment and that the bank was solvent and that its assets were good, clean assets," will be construed as con-

junctive or at least cumulative averments constituting one cause of action. "That it was a good investment" was matter of opinion and not a cause of action within itself, unless known to be false and made with intent to deceive as above defined. If the misrepresentations alleged in count 5 were in the alternative, it would be subject to demurrer.

In count 7 the representations are the same as in count 5, with this added: "And that the old notes and all the old Frost business was out of the way and they would start with a clean slate and make money." "Make money" was matter of opinion, subject to the rule stated. But construing the averments in the conjunctive or as cumulative, counts 5 and 7 were sufficient. Preston Motors Corp. v. Wood, 208 Ala. 173, 94 So. 70. Counts 6 and 8 were framed under section 5677. The representations alleged in count 6 conform to count 5, and in count 8 to count 7.

Plaintiff was permitted, over objection by defendant, to introduce evidence of similar representations made to other persons. It appearing these alleged representations were made about the same time, in prosecution of the same enterprise, they become relevant for two purposes, viz., to show the defendant was engaged in soliciting the purchase of stock, and as a circumstance corroborative of plaintiff that the alleged representations were made to him.

In general, what is logically relevant is legally relevant. If at or about the time of admitted conferences between plaintiff and defendant the latter, in promoting the reorganization of the bank by securing new capital, made similar representations to others, there is some logical probability that he made them to plaintiff. The probative force of such testimony, properly explained and limited, was for the jury. Blackwood v. Standridge, 212 Ala. 156, 102 So. 108; Martin v. Smith, 116 Ala. 639, 22 So. 917; Montgomery So. Ry. Co. v. Matthews, 77 Ala. 357, 54 Am. Rep. 60.

But the trial court went further and allowed evidence that these other witnesses did invest and lost their money. This was error to reverse. It misconceived and gave an effect to the testimony that should have been guarded against. It injected these witnesses as a personal element tending to influence the jury.

Liability to this plaintiff could not rest in any way upon what defendant said to others not connected with him. What he said to them was wholly irrelevant except as, in the circumstances, it may aid in finding what he did say to this plaintiff and with what purpose. The results of representations made to others were wholly irrelevant. Instead of allowing the evidence mentioned, the court should have cautioned the jury as to the purpose and legitimate bearing of their testimony touching representations made to them.

The suit was brought three years after the alleged fraud. Defendant pleaded the statute of limitations of one year.

Plaintiff filed special replication No. 4, as follows:

"The facts of the fraud complained of were unknown to the plaintiff and were not discovered by him, or made known to him, until about the 1st day of April, 1926, when a statement concerning the First National Bank of Athens, Ala., was published in a weekly newspaper which was published at Athens, Ala. The plaintiff inquired at said bank at that time concerning the value of his stock in said bank and was asked if he had not seen the paper and on his reply that he had not seen the paper, he was advised to get a copy of this newspaper and read it and that it would give him the information he wanted, or in substance that. He thereupon got a copy of said newspaper and read the article or notice concerning said First National Bank and then learned for the first time of the fraud practiced upon him in the sale of said bank stock to him. This suit was brought in less than one year after he learned of said fraud complained of."

Demurrer challenged this replication because it does not negative knowledge of facts which, if pursued, would have led to knowledge of the fraud, nor allege that failure to discover it was due to any misconduct of defendant.

In cases of this sort, where representations have induced action and a sense of security in so doing, there is no legal duty to assume an attitude of suspicion and lookout for fraud until some fact comes to plaintiff's knowledge indicating probable fraud. The replication was sufficient. Code, § 8966; Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286; Maxwell v. Lauderdale, 200 Ala. 648, 77 So. 22; Willis v. Rice, 157 Ala. 252, 48 So. 397, 131 Am. St. Rep. 55.

Fraud is deemed to have been discovered when it ought to have been discovered. Facts which provoke inquiry in the mind of a man of reasonable prudence, and which, if followed up, would have led to a discovery of the fraud, constitute sufficient evidence of discovery.

Admittedly the plaintiff knew the bank, after he became a stockholder, remained liable to depositors, and common knowledge of the banking business would suggest some of the assets in the way of loans were still carried. This knowledge, however, would offer no suggestion that the facts had been misrepresented as alleged. Admittedly, the plaintiff had information within about six months after reorganization that the bank was sued upon a demand involving some $28,000. It appears defendant had become president, the suit was contested, and finally settled after the failure of the bank for some $4,500. It is insisted this information was sufficient, as matter of law, to put plaintiff on inquiry which would have led to discovery of fraud, and that defendant

was entitled to the affirmative charge on the plea of the statute of limitations.

A bank is a public institution whose success depends upon public confidence. Allegations of fraud between stockholders and officers are well calculated to impair confidence. In challenging the management, making inquiry and bringing suit, one situated as plaintiff would be taking the risk of crippling the bank and contributing to his own damage.

The true test is whether a prudent and just man, in the light of all the conditions known to him, would proceed to investigate on the suspicion of fraud. To entitle defendant to the affirmative charge, it must also appear without adverse inference that inquiry would have discovered the fraud.

We conclude the issue on the replication was for the jury. Jones v. Coan, 146 Ala. 659, 41 So. 757.

The evidence of representations to plaintiff by defendant was as follows:

"Defendant said to me that they were going to clean up everything and issue new stock and start out with a clean slate, and have $50,000 to do business on and make money; * *. * that it would be the best investment I had ever made." "Said they were going to clean up and start with a clean slate, and they would have a clean new bank; that they would make money. He didn't say anything about getting rid of the old Frost business to me." "I asked Mr. Cartwright if it was all right, and he said absolutely, that it would make money; he said, 'To be plain with you, it will be worth $110 when we open business, and I believe it will be worth $125 in twelve months.' "

On cross-examination these representations were repeated in substance and effect. Nowhere was there evidence that defendant in terms represented the bank as solvent. Each count of the complaint makes this averment. Some of these representations, if made, implied that the reorganized bank would start with unimpaired capital, and therefore solvent.

The question of a variance between averment and proof was not raised according to circuit court rule 34.

As the case must be retried, we would suggest that an action based upon alleged fraudulent misrepresentations should set forth the misrepresentations relied upon in terms or in substance and effect. The defendant is entitled to be advised of what he is charged with saying. Representations of wholly different wording, in which a similar impression is conveyed by implication, does not suffice.

The rules before stated will be sufficient guide as to what alleged representations will support the different counts of the complaint.

Reversed and remanded.

All the Justices concur, except BROWN, J., not sitting.