(135 So. 427)

## COOPER & SONS MOTOR CO. v. KLEPSIG.

### 7 Div. 674.

Court of Appeals of Alabama.

Oct. 7, 1930.

Rehearing Denied Nov. 11, 1930.

Affirmed on Mandate April 7, 1931.

Further Rehearing Denied May 12, 1931.

Merrill, Jones & Whiteside, of Anniston, for appellee.

Bibb, Field, Field & Woolf, of Anniston, for appellant.

RICE, J.

This was a suit by appellee claiming damages as for deceit in the sale of an automobile by appellant to appellee. Code 1923, § 5677; and see Code 1923, §§ 5676, 8049. There were two counts in the complaint, to which the pleas of the general issue and the statute of limitations of one year were interposed. To this latter plea, that the action was barred by the statute of limitations, the appellee filed a replication to the effect that he did not know, etc., of the fraud practiced upon him until within less than one year before the suit was filed. Upon issue joined upon the plea of the general issue and appellee's replication, the case was tried.

The crux of appellee's case, in substance, supported by the evidence offered in his behalf, was that one Jimmie Nunn, while acting within the line and scope of his duties and employment as appellant's agent, represented to appellee that a certain automobile was a new "Chrysler Imperial 1928 Eighty Model, Sedan," when in fact said automobile was *not* a 1928 model, etc., and by means of such false representation appellant's agent, knowing, etc., at the time of its falsity, sold

said automobile to appellee. What we are trying to say is that the case essentially hinged around the question of whether or not appellant's agent, Nunn, as an inducement to the sale of the automobile in question to appellee, represented same to be a 1928 model, when it was *not* such model. Appellee's testimony tended to support his contention.

But the sale of the automobile was consummated on June 15, 1927, and this suit was not begun before April 25, 1929. So, admittedly, the action is barred by the aforementioned statute of limitations (Code 1923, § 8949), unless there are shown facts from which the jury might infer that appellee's replication was proved.

██ It seems to be settled in this state that, so far as concerns the knowledge of an agent that will bind the principal, "the fundamental requirement is that such knowledge on the part of an agent to bind his principal 'must be limited to such knowledge or information as comes to the agent in transacting the business of his principal.' Central of Ga. Ry. Co. v. Joseph, 125 Ala. 319, 28 So. 37. This is a simple rule, easy of application, and just in its results.

"Where the agent's knowledge is of this character, it is constructive notice to the principal entirely regardless of the principal's actual knowledge. Wiley v. Knight, 27 Ala. 346. This is usually explained by saying that the law conclusively presumes that the agent has in fact communicated his knowledge to his principal. We think, however, that the better and more logical explanation is that with respect to the given transaction the agent is in law identified with his principal; that knowledge that comes to the agent, while acting in such matter for his principal, would have come to the principal had he been acting for himself; and that, as a rule of policy and justice, he must be equally charged therewith. Sooy v. State, 41 N. J. Law, 395; Houseman v. Girard Ass'n, 81 Pa. 256–262.

"But on either theory, the rule is not a rule of evidence merely, as is sometimes declared, but a rule of substantive law." Hall & Brown Woodworking Machine Co. v. Haley Furniture & Mfg. Co. et al., 174 Ala. 190, 197, 56 So. 726, 728, L. R. A. 1918B, 924.

Or, as emphasized by Mr. Justice Somerville, in the opinion in the case just above quoted from and cited: "Constructive notice to the principal through the actual knowledge of the agent is not a rule of evidence, but one of substantive law. Given notice to or knowledge of the agent, received while so acting, and the principal is conclusively bound by it; not because he ever knows it in fact, because his actual knowledge is utterly immaterial, but because as to the thing the agent is doing the agent is in law the principal, and the principal is in law the agent.

Their legal identity is complete. Nor can it matter, in this aspect of the rule, whether the agent has, or has not, private reasons or interests which make it unlikely or even certain that he will not inform his principal, as correctly ruled in First Nat. Bank v. Allen, 100 Ala. 476, 14 So. 335, 27 L. R. A. 426, 46 Am. St. Rep. 80."

The application of the legal principles we have quoted, to the facts shown by this record, has seemed of that importance that the court has read the entire evidence, bearing upon the question involved, sitting en banc. It would prolong our opinion to too great an extent to discuss same in detail; so we merely state our conclusions.

It *may* be, that the facts shown, that the sale of the automobile was consummated on June 15, 1927, and that there was thereafter, on, to wit, June 22, 1927, written for, and delivered to, appellee, at his instance, an insurance policy covering liability, etc., on said car, in which it was described, as here pertinent, as a *model 1927* sedan, would only, in connection with the testimony offered on appellee's behalf, serve to make the question of whether or not appellee was at *that time* (i. e., June 22, 1927) put on notice that said automobile *was not* a 1928 model, as it had been represented to him, etc., to be, in such manner that the bar of the statute of limitations would begin to run on that date, a question for the jury's decision.

But it appears that a license tag was procured for the said automobile in October, 1927. As to this, there is a slight, though, as we view it, immaterial, conflict in the evidence. Appellee's witness James Klepsig, on cross-examination testified to facts which showed that he was his father's (appellee's) agent in the matter of assessing the automobile in question for taxes, procuring license tag, etc., at the time mentioned. Appellee, testifying as a witness in his own behalf, tends to qualify, or limit, or deny, James' agency in the premises. But appellee states, in substance, that James was sent along, upon the occasion in question, with Jimmie Nunn, for the purpose of getting said tag, etc. In either view of what the undisputed testimony shows, it appears that appellee's *agent*, for the purpose in hand, was, if not James Klepsig, then Jimmie Nunn. Appellant was in no wise interested or concerned in the getting of the said tag, etc. And it appears without conflict that, at *this* time, it was disclosed to appellee's *agent* that the automobile in question was *not* a model 1928.

The conclusion is therefore inescapable, under the rules of law we have quoted above, that, at least as early as October, 1927, appellee had notice, etc., through his agent duly qualified in the premises, of the alleged fraud that had been practiced upon him. And this is shown by the undisputed testimony.

It follows, waiving a consideration of the numerous other assignments of error, argued and insisted upon, some of which we think well taken, that the trial court erred in refusing to give, at appellant's request, the general affirmative charge in its favor, as for a total failure of the evidence to sustain appellee's replication to the plea of the statute of limitations, the truth of which is obvious from the record. For this error, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### After Remandment by Supreme Court.

### PER CURIAM.

Upon the original submission we were of the opinion that there was a total failure of proof of plaintiff's replication to defendant's (appellant's) admittedly good, and obviously sufficient, plea of the statute of limitations. So we held that the judgment should be reversed because of the refusal to give the duly requested general affirmative charge in appellant's favor. But the Supreme Court did not agree with us.

We come now to give consideration to the assignments of error, duly insisted upon, other than those treated in our first opinion.

So far as the admissibility of extracts from what is described as the "Blue Book" is concerned, we are of the opinion, and hold, that appellant is in no position to complain; it having made similar use of this book, as evidence, to that made the subject of its criticism here on the part of appellee.

The sale of the automobile in question was made for the appellant by one Jas. J. Nunn, shown to have been its agent from the time of said sale to the date of the trial. Nunn, testifying as a witness for appellant, denied ever saying to appellee that the automobile was a 1928 model. Therefore we do not think it was error to allow testimony that he did make such a representation, even after the consummation of the trade, as tending to impeach his testimony.

Then, too, testimony as to such representation after the date of sale was, we think, admissible as being a repetition of the same representation inducing the sale; this tending to evince the bad intent of the original false representation, and hence having a direct bearing upon the question of the propriety, vel non, of awarding punitive damages.

Or, it might be that testimony as to these, later (i. e. after the sale) repetitions of the representation alleged to have induced the sale, and to have been false, was admissible as having a bearing upon the time when appellee discovered the falsity of same; that is to say, Nunn might, by these repetitions, have

kept the appellee from making the investigation, leading to the discovery of the fraud, which otherwise he might have made.

The court in its oral charge at least twice stated that, before the false representations could be made a basis of recovery, they should have been made at the time, or pending the negotiations, or made during the negotiations or trade of the automobile. Under the court's instructions it is clear that no statement of the witness Nunn was allowed to be considered a basis of recovery other than his statements, alleged, made during the negotiation of the trade.

Appellant's brief contains 101 typewritten pages; there are 147 alleged errors assigned. But what purports to be an "argument" in support of very many of these assignments of error, is no more than a repetition of the assignment. In fairness to counsel it ought to be said that that is, in many instances, true, because, obviously, there is nothing to be said in support of the assignment. Our observation is, Why make it?

We have given studious attention to all those assignments which by even a stretch of the rule, could be said to be insisted upon. We find none of them well taken.

The allegations in appellee's complaint were amply supported by the evidence. The oral charge of the court, in connection with the given charges, fully covered the law of the case. Cartwright v. Braly, 218 Ala. 49, 117 So. 477.

The requested written charges, which were refused, if not otherwise correctly so refused, were covered by charges given.

We find nowhere prejudicial error, and the judgment is affirmed.

Affirmed.